**Charlene COOPER–DAY, Appellant,**

v.

**RME PETROLEUM CO., The Successor Appellee in Interest of Union Pacific Resources Company a/k/a Union Pacific Resources Group, Inc., Appellee.**

No. 2–02–138–CV.

Court of Appeals of Texas,
Fort Worth.

Sept. 18, 2003.

Rehearing Overruled Oct. 23, 2003.

Fielding, Parker & Jones, L.L.P., David Fielding, Nathan B. Schattman, Fort Worth, for Appellant.

Littler Mendelson, A Prof. Corp., Holly Williamson, Ashley S. Zimmerman, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Lisa S. Liles, Houston, for Appellee.

PANEL B: CAYCE, C.J.; HOLMAN and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

Charlene Cooper–Day ("Cooper–Day") appeals the summary judgment rendered against her on her gender discrimination claims for constructive discharge and unequal pay. The primary issue we address in this appeal is whether Cooper–Day timely filed her administrative complaint as mandated by Texas Labor Code section 21.202. TEX. LAB.CODE ANN. § 21.202 (Vernon 1996). We hold that Cooper–Day's constructive discharge and unequal pay claims are jurisdictionally barred because they were not administratively filed within 180 days of the date the alleged unlawful employment practices occurred. Therefore, we will affirm the trial court's summary judgment.

### II. FACTUAL AND PROCEDURAL BACKGROUND

In July 1990, Cooper–Day applied for and received a land analyst position at Union Pacific Resources Company ("UPR")[1] with a salary of $39,500. In her position as a land analyst, she assisted landmen, provided administrative support, and negotiated simple right-of-way leases and surface-owner agreements.

After several years as a land analyst, Cooper–Day was promoted to senior land analyst with a salary of $48,000, and in the fall of 1996, she was promoted to the posi-

tion of Landman IV and given a salary of $60,000. Although Cooper–Day had not negotiated complex deals and contracts such as farm-in agreements, farm-out agreements, joint venture agreements, acquisition agreements, gas balancing agreements, joint operating agreements, and federal exploratory unit agreements, she was placed in the middle of the landman hierarchy based on her experience, skill set, work ethic, and people skills. After Cooper–Day was promoted to landman and was placed in charge of the Overthrust region, she continued to perform the job responsibilities of her prior position because her unit was under-staffed. Additionally, she was given responsibility for the Moxa Arch region when the person in charge of that region was transferred. Consequently, Cooper–Day was the only landman who was responsible for two significant geographic regions.

In April 1997, about seven months after her promotion to landman, Cooper–Day received a raise that increased her salary to $61,950. A year later, she received another raise, which made her salary $68,100. Along with that raise, she was offered a $3,098 incentive bonus and a $10,000 retention bonus, provided she would stay with UPR until April 1, 1999.

On or about May 14, 1998, Cooper–Day decided to resign because one of her deals had fallen through; she had endured a long day at work; she had been working hard for a six-month period; she did not believe she would ever make as much money as the other landmen; and she had medical problems. That night, Cooper–Day told her husband, Marshall Day ("Day"), of her decision to resign. She asked Day to call Chris Cirone ("Cirone"), who was a family friend and a land manag-

1. Although Union Pacific Resources Company has had many names, for simplicity, we refer to it in this opinion as UPR.

er at UPR, and arrange a breakfast meeting for the next day. At the breakfast meeting on May 15, 1998, Day explained that Cooper–Day had decided on May 14, 1998, to resign from UPR. Cirone asked Day to have Cooper–Day reconsider her decision, but Day said that Cooper–Day would not change her mind. Cooper–Day did not return to work after May 14, 1998, and she never sent or delivered a resignation letter to UPR.

Cirone did not inform UPR of Cooper–Day's decision on the day of the breakfast meeting because Cooper–Day was already scheduled to be out of the office at an office-sponsored golf tournament. On May 17, 1998, Cooper–Day and her husband invited Cirone over for dinner, and Cooper–Day herself informed Cirone that her time off had only strengthened her decision not to return to work. On Monday, May 18, 1998, Cirone informed Bill Lanier, an employee in UPR's People Department, of Cooper–Day's decision to resign. Thus, UPR internally documented May 18, 1998, as Cooper–Day's resignation date. After Cooper–Day resigned, UPR's president took her to lunch and begged her to come back to work, and her boss, Ms. Dussing, called her to discuss her resignation.

On November 16, 1998, Cooper–Day filed a complaint with the Texas Commission on Human Rights and the Equal Employment Opportunity Commission ("EEOC"), asserting that UPR had discriminated against her based on her gender. Cooper–Day later sued UPR in district court, alleging gender discrimination. UPR filed a motion for summary judgment or in the alternative, plea to the jurisdiction. After a hearing, the trial court granted UPR's motion. This appeal followed.

### III. STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Southwestern Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Southwestern Elec. Power Co.,* 73 S.W.3d at 215; *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex. 1999); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.,* 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true. *Rhone–Poulenc,* 997 S.W.2d at 223; *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.,* 391 S.W.2d at 47. The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin,* 589 S.W.2d at 678.

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999).

To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex.1996).

## IV. JURISDICTIONAL BAR TO GENDER DISCRIMINATION CLAIMS

In her first two points, Cooper–Day contends that the trial court had jurisdiction over her claims for constructive discharge and pay discrimination because: (1) she filed her complaint within 180 days of her last official day of employment with UPR (*e.g.*, the date UPR shows for her resignation—May 18, 1998); (2) her constructive discharge claim involved continuing discrimination so that she simply had to show a series of related acts, one of which occurred within 180 days of her administrative complaint; and (3) her pay discrimination claim was timely in any event because she received her last paycheck within 180 days of her claim. UPR responds that because Cooper–Day decided to resign on May 14, 1998, and communicated that decision to UPR on May 15, 1998, she had only until November 11, 1998—180 days from May 15, 1998—to file her administrative discrimination complaint. Because Cooper–Day did not file her administrative complaint until November 16, 1998, UPR contends that the trial court lacked jurisdiction over both her constructive discharge claim and her pay discrimination claim. We address these issues in turn.

### A. Administrative Complaint Not Filed Within 180–Day Limitations Period

■ Texas law requires that a complaint of unlawful employment practices be filed with the EEOC or the Texas Commission on Human Rights within 180 days after the alleged unlawful employment practice occurred. *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex.1996); *see* TEX. LAB.CODE ANN. § 21.202. This time limit is mandatory and jurisdictional. *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 486 (Tex. 1991). Failure to timely file an administrative complaint deprives Texas trial courts of subject-matter jurisdiction. *Czerwinski v. Univ. of Tex. Health Science Ctr.*, 116 S.W.3d 119, 122 (Tex.App.-Houston [14th Dist.] 2002, pet. denied); *Vincent v. W. Tex. State Univ.*, 895 S.W.2d 469, 473 (Tex.App.-Amarillo 1995, no writ).

■ The 180 day limitations period for an employment discrimination complaint begins when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition. *Specialty Retailers*, 933 S.W.2d at 493. The fact that the employee might have felt the effects of the discriminatory treatment later or that the damage may continue to occur for an extended period of time after the discriminatory treatment does not extend the commencement of limitations. *Id.* Thus, the 180–day limitations period for an employment discrimination complaint commences on the date the alleged unlawful employment practices *occurred*. *See* TEX. LAB.CODE ANN. § 21.202; *Specialty Retailers*, 933 S.W.2d at 492–93.

■ Constructive discharge occurs when an employer makes working conditions so intolerable that an employee reasonably feels compelled to resign. *Wal–Mart Stores, Inc. v. Bertrand*, 37 S.W.3d 1, 8 (Tex.App.-Tyler 2000, pet. denied); *Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 134 (Tex.App.-Houston [1st Dist.] 1999, no pet.). Pay discrimination occurs when the employee is informed of the allegedly discriminatory pay. *See Haliburton v. City of San Antonio*, 974 S.W.2d 779, 782 (Tex.App.-San Antonio

1998, no pet.). Pay discrimination does not continue to occur until the last allegedly discriminatory paycheck is received unless the employer has implemented a facially invalid payment system and continues to pay under that system or the unequal pay is part of, or a repetition of, a past employment violation. *See id.* at 783. Thus, Cooper–Day was required to file her administrative complaint within 180 days of the date on which the alleged intolerable working conditions and unequal pay occurred.

Cooper–Day contends that she timely filed her constructive discharge administrative complaint because the intolerable working conditions that forced her constructive discharge, including being assigned an additional territory and having inadequate support staff, existed for almost eighteen months. UPR counters that Cooper–Day's own testimony that the allegedly intolerable working conditions occurred for almost eighteen months before she resigned proves that the conditions occurred more than 180 days before she filed her administrative constructive discharge complaint. UPR therefore contends that Cooper–Day's 180–day time period for purposes of her constructive discharge claim began to run, at the latest, on the last day she could have been subject to discrimination, her last day of work—May 14, 1998—requiring her administrative complaint to be filed by November 11, 1998.

 In response to this argument by UPR, Cooper–Day argues that a genuine issue of material fact exists concerning the date she resigned, i.e., the date of her constructive discharge, and concerning the

date she was last subjected to the alleged discriminatory conduct. She contends that Cirone refused to accept her resignation at the May 15, 1998 breakfast meeting and that, therefore, the resignation was not effective on that date. This argument, however, is contrary to controlling law:

> Resignation from a corporate position is not required to be in writing, nor is it required to be in any special form, and it takes effect immediately from the time notice of the resignation is given, unless a subsequent date is named, by the one resigning. A resignation does not require an acceptance unless it is tendered to take effect on acceptance.

*Bell v. Tex. Employers' Ins. Ass'n,* 43 S.W.2d 290, 293 (Tex.Civ.App.-Dallas 1931, writ dism'd). Here, Cooper–Day provided no effective date of resignation, so her resignation was effective immediately, whether or not Cirone wanted to accept it. *See id.*

Cirone's failure to communicate Cooper–Day's resignation to UPR until May 18, 1998, and UPR's internal documents listing May 18, 1998, as the date of Cooper–Day's resignation do not raise a genuine issue of material fact concerning the date on which Cooper–Day's statutory 180–day time period began to run for purposes of her constructive discharge complaint. Cirone was acting as UPR's representative when he received her resignation.[2] Cooper–Day did not return to work after notifying Cirone of her resignation, did not send a resignation letter to UPR, and took no steps to inform other UPR representatives of her resignation. Cirone, in his official capacity as UPR's agent, received

---

2. In a deposition excerpt attached to UPR's motion for summary judgment Cooper–Day testified:

 Q. How did you communicate to UPR that you would be resigning?

 A. I had my husband call Mr. Cirone. And they met the next morning, and he told him.

Cooper–Day's resignation, and notice to him served as notice to UPR.

■ Thus, the summary judgment evidence conclusively establishes that Cooper–Day's resignation was effective on May 15, 1998, when it was conveyed to UPR's representative, Cirone. The summary judgment evidence likewise conclusively establishes that Cooper–Day decided to resign on or before May 14, 1998, based on her work experiences prior to that date. Accordingly, Cooper–Day's administrative complaint, filed on November 16, 1998, was not filed within 180 days of UPR's date on which the alleged unlawful discrimination occurred. *Accord Davila v. Lockwood*, 933 S.W.2d 628, 630 (Tex.App.-Corpus Christi 1996, no writ) (recognizing constructive discharge occurs, at the latest, on date employee gives notice of resignation); *Stroud v. VBFSB Holding Corp.*, 917 S.W.2d 75, 79–81 (Tex.App.-San Antonio 1996, writ denied) (same). Therefore, Cooper–Day's administrative complaint concerning her alleged constructive discharge was not timely filed. See *Czerwinski*, 116 S.W.3d at 122; *Vincent*, 895 S.W.2d at 473.

We cannot agree with Cooper–Day's position that her administrative complaint was timely filed within 180 days of the date that UPR placed in its files as her resignation date. The resignation date UPR placed in its files is not controlling; Cooper–Day was aware of the intolerable working conditions causing her alleged constructive discharge, at the latest, on the date Day tendered her resignation to Cirone, and she had 180 days from that date to file her administrative complaint. *See* TEX. LAB.CODE ANN. § 21.202; *Specialty Retailers*, 933 S.W.2d at 493; *Davila*, 933 S.W.2d at 630; *Stroud*, 917 S.W.2d at 79–81.

■ Concerning her discriminatory pay claim, Cooper–Day contends that when UPR gave her pay raises in 1996, 1997, and 1998, she believed UPR discriminated against her based on her gender by paying her less than her male counterparts. Comparing her salary to that of several landmen who had more experience than she, Cooper–Day asserts that she received a lower base pay than her male counterparts. As noted above, the 180-day limitations period begins to run when an employee is *informed* of the allegedly discriminatory employment decision, not when that decision comes to fruition. *Specialty Retailers*, 933 S.W.2d at 492–93; *see also Delaware State College v. Ricks*, 449 U.S. 250, 257–58, 101 S.Ct. 498, 503–04, 66 L.Ed.2d 431 (1980) (holding that the denial of tenure constituted alleged discriminatory employment decision; actual termination of employment approximately one year later was merely delayed but inevitable consequence tenure denial). Here, Cooper–Day complains of UPR's decisions regarding her pay rate; Cooper–Day had notice of those decisions more than 180 days before she filed her administrative discrimination complaint, and her paychecks were merely the inevitable consequence of UPR's pay rate decisions in 1996, 1997, and 1998. *See Specialty Retailers*, 933 S.W.2d at 492–93. Thus, Cooper–Day's discriminatory pay claims accrued each time she was informed that she was receiving a raise, albeit a raise she did not consider equal to those given to men. Consequently, Cooper–Day's administrative filing on November 16, 1998, more than 180 days after her last pay raise, was not timely.

**B. No Continuing Violation Theory Applies to Cooper–Day's Claims**

**1. Constructive Discharge Complaint**

■ Cooper–Day nonetheless argues that the trial court possesses jurisdiction over her constructive discharge and

discriminatory pay causes of action pursuant to *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 117–18, 122 S.Ct. 2061, 2074–75, 153 L.Ed.2d 106 (2002). With regard to her constructive ·discharge theory, she contends that under *Morgan* the trial court may consider the entirety of UPR's relationship · with and treatment of her if a single event supporting the alleged intolerable environment and causing constructive discharge occurred within 180 days of the filing of her administrative complaint. *Morgan*, however, involved a hostile work environment, which by nature is a continuing violation that, under federal law, may toll the limitations period. 536 U.S. at 103, 122 S.Ct. at 2066–67. Cooper–Day contends, for the first time on appeal, that a hostile work environment at UPR, created by unequal pay, triggered her constructive discharge. This argument is waived because it was not raised in the trial court. TEX.R.APP. P. 33.1(a). Further, discrimination in the form of unequal pay, alone, is not sufficient to support a claim for constructive discharge. *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1077 (5th Cir.1981). Thus, Cooper–Day's constructive discharge claim does not fall within the parameters of *Morgan*.

▮ Cooper–Day also relies on *Huckabay v. Moore* for the proposition that long-term discrimination in the working environment, such as discrimination leading to a constructive discharge, is considered a continuing tort.[3] 142 F.3d 233, 238 (5th Cir.1998). Regarding the continuing violation theory, the Fifth Circuit in *Huckabay* explained:

The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. . . . Thus, a plaintiff can avoid a limitations bar for an event that fails to fall within the statutory period where there is a persisting and continuing system of discriminatory practices in promotion or transfer that produces effects that may not manifest themselves as individually discriminatory except in cumulation over a period of time.

*Id.* at 238–39. Under the *Huckabay* test, a plaintiff must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, instead of any discrete occurrence, that gives rise to the cause of action. *Id.* at 239.

▮ Cooper–Day contends that UPR's failure to provide her with an assistant and assignment of an extra region to her constitutes "an organized scheme leading to and including a present violation." These two instances of alleged discrimination, however, are discrete acts. *See, e.g., Morgan*, 536 U.S. at 101, 122 S.Ct. at 2073 (recognizing that "termination, failure to promote, denial of transfer, or refusal to hire" are easily identifiable as discrete acts). Cooper–Day presented no summary judgment evidence raising a genuine issue of material fact concerning her continuing violation theory. The trial court correctly granted summary judgment for UPR on Cooper–Day's constructive discharge

---

**3.** The theory of continuing tort is somewhat analogous to the continuing violation theory. *Haliburton*, 974 S.W.2d at 785 n. 2. Continuing tort causes of action, however, are grounded in the idea of a continuing injury to the plaintiff and accrue when the injurious act ceases. *Id.* Cooper–Day presents no "continuing tort" type arguments. Instead, we address her arguments under the continuing violation theory because she relies on *Morgan* and *Huckabay*, which both discuss the continuing violation doctrine.

claim.[4] We overrule Cooper–Day's first point.

### 2. Pay Discrimination Complaint

Cooper–Day also claims that her administrative pay discrimination complaint was timely filed because *Morgan* applies to that claim. 536 U.S. at 112, 122 S.Ct. at 2071. She argues that the trial court possesses jurisdiction over this claim because she received her final paycheck, covering one day of work and her accrued vacation time, on May 29, 1998, within 180 days of the date she filed her administrative complaint. UPR, on the other hand, argues that *Morgan* does not apply because: (1) Cooper–Day knew of the alleged discriminatory pay rate decision prior to the 180–day filing deadline; (2) Cooper–Day did not plead or offer controverting summary judgment evidence concerning any hostile environment claim; (3) Cooper–Day failed to offer summary judgment evidence triggering any continuing violation theory of avoidance; and (4) Cooper–Day's complaints involve discrete acts that should have put her on notice of the alleged discriminatory pay.

In order to prevail on a continuing violation theory, Cooper–Day must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action. *Huckabay,* 142 F.3d at 239; *see also Celestine v. Petroleos de Venezuela SA,* 266 F.3d 343, 352 (5th Cir.2001) (citing *Huckabay* ). In determining whether unlawful discrimination is a discrete act or a continuing violation, courts look to several factors:

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring ... or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate.

*Berry v. Bd. of Supervisors,* 715 F.2d 971, 981 (5th Cir.1983), *cert. denied,* 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986). Cooper–Day, however, fails to argue and did not plead an organized scheme leading to and including a present violation. The summary judgment evidence fails to show an organized scheme. Moreover, the permanence of UPR's pay rate decisions, made annually except when a promotion was involved, should have triggered Cooper–Day's awareness of and duty to assert her rights where she believed UPR's 1996, 1997, and 1998 pay decisions were discriminatory. Cooper–Day's claim that she was paid less than her male counterparts and that Dussing admitted UPR discriminated in its pay based upon gender are merely evidence of isolated employment decisions, or discrete acts. *See Huckabay,* 142 F.3d at 239 n. 3, 240 (recognizing that mere receipt of paycheck does not constitute "continuing act" of discrimination); *Berry,*

---

**4.** Because the trial court properly granted summary judgment for UPR on Cooper–Day's constructive discharge claim on limitations grounds, we need not address Cooper–Day's third point claiming that a genuine issue of material fact exists concerning the merits of her constructive discharge claim. *See* Tex. R.App. P. 47.1 (providing that appellate court need only address every issue necessary to disposition of appeal).

715 F.2d at 981 (same); *see also United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). Cooper–Day's May 29, 1998 paycheck was based on a pay rate decision that occurred more than 180 days before she filed her administrative complaint. We hold that the trial court did not err by determining that no summary judgment evidence exists supporting application of the continuing violation theory to Cooper–Day's pay discrimination claim. *See Celestine,* 266 F.3d at 352 (refusing to apply continuing violation theory to racial discrimination claims); *Hendrix v. City of Yazoo City,* 911 F.2d 1102, 1103–05 (5th Cir.1990) (refusing to apply continuing violation theory to pay discrimination claim when firefighters were fully aware of reduction in base pay when they received later check); *Krough v. Cessford Constr. Co.,* 231 F.Supp.2d 914, 921 (S.D.Iowa 2002) (refusing to apply continuing violation theory to pay discrimination claim when employee was fully aware of wage discrepancy when she accepted position).

UPR's pay rate decisions constituted discrete acts, Cooper–Day knew of these allegedly discriminatory pay rate decisions more than 180 days before she filed her administrative complaint, and the continuing violation doctrine does not apply to her pay discrimination claim. Moreover, no summary judgment evidence exists that UPR implemented a facially invalid payment system or that Cooper–Day's alleged unequal pay was part of, or a repetition of, a past employment violation. *See Haliburton,* 974 S.W.2d at 782. Therefore, we hold that UPR conclusively established its right to summary judgment on Cooper–Day's pay discrimination claim based on her failure to file her administrative complaint within 180 days of May 15, 1998, i.e., by November 11, 1998. We overrule Cooper–Day's second point.

### V. CONCLUSION

Having determined that the trial court properly granted summary judgment for UPR based on her failure to file her administrative complaint within the statutory 180–day period, and having overruled Cooper–Day's first and second points, we affirm the trial court's judgment. In light of this disposition, we need not address Cooper–Day's third, fourth, or fifth points. *See* TEX.R.APP. P. 47.1.