Georgia Kaye Sympson v. Dallas/Fort Worth International Airport Board

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-150-CV

GEORGIA KAYE SYMPSON APPELLANT

V.

DALLAS/FORT WORTH APPELLEE

INTERNATIONAL AIRPORT BOARD 

------------

FROM THE 342
ND
 DISTRICT COURT OF TARRANT COUNTY

------------

NO. 2-04-369-CV

GEORGIA KAYE SYMPSON APPELLANT

V.

DALLAS/FORT WORTH APPELLEE

INTERNATIONAL AIRPORT BOARD 

------------

FROM THE 
67
th
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Georgia Kaye Sympson (“Sympson”) filed suit in the 342nd District Court against Appellee Dallas/Fort Worth International Airport Board (“DFW”) for unlawful discriminatory employment practices.  DFW filed a plea to the jurisdiction.  The trial court granted DFW’s plea to the jurisdiction, dismissing the case without prejudice.  Following receipt of a notice of her right to sue from the Texas Commission on Human Rights (“TCHR”), Sympson refiled her suit in the 67th District Court.  DFW again filed a plea to the jurisdiction, which the trial court granted.  Sympson appeals both judgments.  Because the issues in the two appeals are intertwined, we have granted Sympson’s motion to consolidate and consolidated these appeals.  We affirm both judgments.

Background Facts

In 1973, Sympson began her employment as a police officer for DFW.  In November 2001, she filed a dual Equal Employment Opportunity Commission (“EEOC”)/TCHR claim, alleging discrimination in the calculation of her pension benefits.  She continued to work while the charge was pending.

In December 2001, Sympson left active duty to seek medical treatment for lower back injuries that she apparently sustained on the job.  She was on on-the-job-injury leave until May 6, 2002, when she returned to work for thirty days of modified duty.  Sympson was subsequently given two successive extensions of modified duty.  She worked in a modified duty capacity until August 12, 2002, when she again left for medical treatment.  Because DFW policies do not allow more than ninety days of modified duty, Sympson was informed by letter dated August 13, 2002 that she had exhausted the maximum period for modified duty and would have to return to full duty on August 17.

Her doctor released her to work with certain restrictions in mid-October 2002, but DFW would not allow her to return to work at that time.  She then requested full-time work but to the assignment of duties that would allow her to work without wearing the police officer belt and equipment—the accommodation she received while on modified duty.  On February 14, 2003, Sympson returned to full duty.  Although DFW denied her a position in which she would not have to wear the gun belt, DFW agreed to provide her with a vest to hold the equipment normally held in the gun belt.

When Sympson returned to work, she was shown two vests typically worn by undercover officers to hold a firearm, handcuffs, extra ammunition, radio, pepper spray, and any other equipment.  She determined what she thought was the appropriate size, and both vests were ordered.  For the next week to ten days, Sympson had to requalify with her weapon and go through additional training on changes in the laws and procedures because she had been on leave for an extended period of time.  During that training, she did not wear a belt or vest.  At the end of her training, one of the vests that had been ordered was available for her to wear.

The vest, however, was too large, covering her gun, and coworkers and a supervisor commented on her appearance in the vest.  Sympson then alleged that the stress of performing her duties with the oversized vest and the demeanor of her coworkers forced her to resign.  In a letter dated February 27, 2003, Sympson informed DFW of her resignation, effective April 1, 2003.  The other vest that had been ordered was on backorder and did not arrive until after Sympson had decided to resign.

On July 16, 2003, Sympson filed her second dual claim with the EEOC and TCHR, alleging retaliation, gender discrimination, and age discrimination.  Sympson sued DFW for constructive discharge and intentional infliction of emotional distress.  She did not receive her Texas right-to-sue letter until after she had already filed suit in the 342nd District Court.  DFW filed a plea to the jurisdiction, which was granted.  The 342nd District Court found that DFW is a governmental entity, that it informed Sympson of the adverse act on August 13, 2002, and that she filed suit on December 23, 2003.  The trial court concluded that the claim of constructive discharge was barred by section 21.202 of the Labor Code
(footnote: 2) and that the trial court therefore lacked jurisdiction.  In her appeal from the 342nd District Court, Sympson challenges only that court’s dismissal of the constructive discharge claim.  After the dismissal, on July 12, 2004, Sympson filed suit again in the 67th District Court.  DFW again filed a plea to the jurisdiction.  The 67th District Court granted DFW’s plea to the jurisdiction and dismissed the case, which Sympson also challenges.

In six issues, Sympson now argues that the 342nd District Court erroneously (1) exercised its jurisdiction to reach the question of whether Sympson’s claims related to her July 16, 2003 charge of discrimination were barred under section 21.202; (2) concluded that section 21.202 barred it from exercising jurisdiction over Sympson’s July 16, 2003 charge of discrimination; (3) concluded that the sole adverse employment action that formed the basis of the constructive discharge was the refusal to extend Sympson’s assignment to light desk duty; and (4) concluded that Sympson is limited to retaliation, gender discrimination, or both as the underlying illegal motives for DFW’s actions; and that the 67th District Court erroneously (5) concluded that res judicata barred the filing of the second lawsuit and (6) concluded that collateral estoppel barred the filing of the second lawsuit.

Standard of Review

A plea to the jurisdiction contests the trial court’s authority to determine the subject matter of the cause of action.
(footnote: 3)  
Because the question of subject matter jurisdiction is a question of law, we review a trial court’s ruling on a plea to the jurisdiction de novo.
(footnote: 4)
Notice of Right To Sue 

In her first issue, Sympson argues that because she had not yet received a right to sue letter, the 342nd District Court did not have subject matter jurisdiction to reach the question of whether her claims related to her July 16, 2003 charge were barred under section 21.202.  We disagree.

In Texas, receipt of a right to sue letter is not jurisdictional and is not mandatory before filing suit.
(footnote: 5)  Accordingly, we overrule Sympson’s first issue. 

TCHR Complaint

In her second and third issues, Sympson argues that the 342nd District Court erred by concluding that section 21.202 of the Labor Code barred it from exercising jurisdiction over her July 16, 2003 charge of discrimination and that the sole adverse employment action that formed the basis of the constructive discharge was the refusal to extend Sympson’s assignment to light desk duty.  We disagree.

The Texas Commission on Human Rights Act (”Act”) establishes a comprehensive administrative review system for obtaining relief from unlawful employment practices.
(footnote: 6)  The Act provides three applicable limitations periods.  First, before suing in state court, an employee must exhaust her administrative remedies under the Act by first filing a complaint with the TCHR within 180 days of the alleged discriminatory act.
(footnote: 7)
 If the TCHR dismisses the complaint or determines that it will not file suit, the complainant may request a written notice of right to file a private, civil suit in the district court.
(footnote: 8)  Second, after the complainant receives the notice of right to sue from the TCHR, if the complainant chooses to file suit, she must do so within 
sixty days of the receipt of notice.
(footnote: 9)  Third, even if notice of a right to sue has not been received, a complainant must file a civil action on her claims within two years from the date she filed her initial charge with the TCHR, or her claim is barred by the statute of limitations.
(footnote: 10)
 The first limitations period, which is mandatory and jurisdictional, requires that a complaint be filed with the TCHR within 180 days after the alleged unlawful practice occurred.
(footnote: 11)  Failure to timely file an administrative complaint deprives Texas trial courts of subject matter jurisdiction.
(footnote: 12)
 The 180-day limitations period for an employment discrimination complaint begins when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition.
(footnote: 13)  
The fact that the employee might have felt the effects of the discriminatory treatment later or that the damage may have continued to occur for an extended period of time after the discriminatory treatment does not extend the commencement of limitations.
(footnote: 14)  Thus, the 180-day limitations period for an employment discrimination complaint commences on the date the alleged unlawful employment practice 
occurred
.
(footnote: 15)
 In this case, Sympson received a letter on August 13, 2002 from DFW stating that she would have to return to full duty on August 17, 2002 or her employment would be terminated.  Although, Sympson did not actually return to work by that date and was not terminated, the basis of her complaint is that she was discriminated against by DFW when it required her to return to full rather than light or modified duty, as it had allegedly done for male employees.   Although Sympson argues that the ill-fitting vest that was given to her to wear for her return to full duty in February 2003 caused her constructive discharge, DFW’s providing her that ill-fitting vest did not extend the commencement of limitations.  That accommodation did not change the fact that Sympson was still required to return to full rather than modified duty.  The ill-fitting vest was simply an effect of the alleged discriminatory treatment—requiring her to return to full duty rather than being reassigned or given modified duty as were male employees—or damage that continued to occur for an extended period of time after the discriminatory treatment.  Sympson even testified that she knew as of or around October 15, 2002 that she would not be given any modified duty or be reassigned to areas that were less strenuous, although the male employees that had experienced injury had been given these modifications.

Therefore, August 13, 2002, the date of the letter informing Sympson that she had to return to full duty or
, at the very latest, October 15, 2002, the date she testified that discussions about returning to duty were held, was the day the 180-day period began.  Sympson did not file her complaint until July 16, 2003.  Consequently, Sympson did not file her complaint within 180 days of the date that the alleged unlawful employment practices occurred, and neither the 342nd District Court nor the 67th District Court had subject matter jurisdiction over Sympson’s complaint.  Accordingly, we overrule Sympson’s second and third issues.  Because we hold that the 342nd District Court did not have jurisdiction, we do not reach her fourth issue.
(footnote: 16)  Moreover, we do not reach Sympson’s fifth and sixth issues.
(footnote: 17)
Conclusion

Having held that neither the 342nd District Court nor the 67th District Court had subject matter jurisdiction over Sympson’s claim, we affirm the trial courts’ judgments.

LEE ANN DAUPHINOT

JUSTICE

PANEL A: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:  June 9, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See
 
Tex. Lab. Code Ann. 
§ 21.202 (Vernon 1996).

3:
Bland ISD v. Blue
, 34 S.W.3d 547, 554 (Tex. 2000).

4:
Mayhew v. Town of Sunnyvale
, 964 S.W.2d 922, 928 (Tex. 1998), 
cert. denied
, 526 U.S. 1144 (1999); 
Levatte v. City of Wichita Falls
, 144 S.W.3d 218, 222 (Tex. App.—Fort Worth 2004, no pet.).

5:
See
 
Tex. Lab. Code Ann. 
§ 21.252; 
see also Rice v. Russell-Stanley
,
 L.P.
, 131 S.W.3d 510, 513 (Tex. App.—Waco 2004, pet. denied); 
Burgmann Seals Am.
, 
Inc. v. Cadenhead
, 135 S.W.3d 854, 857–58 (Tex. App.—Houston [1st Dist.] 2004, pet denied); 
City of Houston v. Fletcher
, 63 S.W.3d 920, 923 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

6:
Schroeder v. Tex. Iron Works
,
 Inc.
, 813 S.W.2d 483, 485 (Tex. 1991). 

7:
Id
.; 
see
 
Tex
. 
Lab. Code Ann
. § 21.202(a).

8:
Schroeder
, 813 S.W.2d at 485.

9:
Id.
; 
see
 
Tex. Lab. Code Ann. 
§ 21.254.

10:
Tex. Lab. Code Ann. 
§ 21.256.

11:
See
 
Tex. Lab. Code Ann. 
§ 21.202; 
Cooper-Day v. RME Petroleum Co.
, 121 S.W.3d 78, 83 (Tex. App.—Fort Worth 2003, pet denied); 
Specialty Retailers
,
 Inc. v. DeMoranville
, 933 S.W.2d 490, 492 (Tex. 1996); 
Schroeder
, 813 S.W.2d at 486.

12:
Cooper-Day
, 121 S.W.3d at 83; 
Czerwinski v. Univ. of Tex. Health Science Ctr.
,
 
No. 14-02-00230-CV, slip op. at 5, 2002 WL 31718637, at *3 (Tex. App.—Houston [14
th
 Dist.] Dec. 5, 2002, pet. denied); 
Vincent v. W. Tex. State Univ.
, 895 S.W.2d 469, 473 (Tex. App.—Amarillo 1995, no writ).

13:
Cooper-Day
, 121 S.W.3d at 83; 
Specialty Retailers
, 933 S.W.2d at 493.

14:
Cooper-Day
, 121 S.W.3d at 83; 
Specialty Retailers
, 933 S.W.2d at 493.

15:
Cooper-Day
, 121 S.W.3d at 83;
 see also 
Tex. Lab. Code Ann. 
§ 21.202; 
Speciality Retailers
, 933 S.W.2d at 492-93.

16:
See
 
Tex. R. App. P.
 47.1.

17:
See
 
id
.  Sympson concedes that we do not reach her fifth and sixth issues if her first through fourth issues are overruled.