COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-150-CV
 
  
GEORGIA 
KAYE SYMPSON                                                     APPELLANT
  
V.
  
DALLAS/FORT 
WORTH                                                             APPELLEE
INTERNATIONAL 
AIRPORT BOARD
 
 
------------
 
FROM 
THE 342ND DISTRICT COURT OF TARRANT COUNTY
 
------------
 

NO. 
2-04-369-CV
  
 
GEORGIA 
KAYE SYMPSON                                                     APPELLANT
  
V.
  
DALLAS/FORT 
WORTH                                                             APPELLEE
INTERNATIONAL 
AIRPORT BOARD
 
  
------------
 
FROM 
THE 67th DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Georgia Kaye Sympson (“Sympson”) filed suit in the 342nd District Court 
against Appellee Dallas/Fort Worth International Airport Board (“DFW”) for 
unlawful discriminatory employment practices. DFW filed a plea to the 
jurisdiction. The trial court granted DFW’s plea to the jurisdiction, 
dismissing the case without prejudice. Following receipt of a notice of her 
right to sue from the Texas Commission on Human Rights (“TCHR”), Sympson 
refiled her suit in the 67th District Court. DFW again filed a plea to the 
jurisdiction, which the trial court granted. Sympson appeals both judgments. 
Because the issues in the two appeals are intertwined, we have granted 
Sympson’s motion to consolidate and consolidated these appeals. We affirm both 
judgments.
Background 
Facts
        In 
1973, Sympson began her employment as a police officer for DFW. In November 
2001, she filed a dual Equal Employment Opportunity Commission (“EEOC”)/TCHR 
claim, alleging discrimination in the calculation of her pension benefits. She 
continued to work while the charge was pending.
        In 
December 2001, Sympson left active duty to seek medical treatment for lower back 
injuries that she apparently sustained on the job. She was on on-the-job-injury 
leave until May 6, 2002, when she returned to work for thirty days of modified 
duty. Sympson was subsequently given two successive extensions of modified duty. 
She worked in a modified duty capacity until August 12, 2002, when she again 
left for medical treatment. Because DFW policies do not allow more than ninety 
days of modified duty, Sympson was informed by letter dated August 13, 2002 that 
she had exhausted the maximum period for modified duty and would have to return 
to full duty on August 17.
        Her 
doctor released her to work with certain restrictions in mid-October 2002, but 
DFW would not allow her to return to work at that time. She then requested 
full-time work but to the assignment of duties that would allow her to work 
without wearing the police officer belt and equipment—the accommodation she 
received while on modified duty. On February 14, 2003, Sympson returned to full 
duty. Although DFW denied her a position in which she would not have to wear the 
gun belt, DFW agreed to provide her with a vest to hold the equipment normally 
held in the gun belt.
        When 
Sympson returned to work, she was shown two vests typically worn by undercover 
officers to hold a firearm, handcuffs, extra ammunition, radio, pepper spray, 
and any other equipment. She determined what she thought was the appropriate 
size, and both vests were ordered. For the next week to ten days, Sympson had to 
requalify with her weapon and go through additional training on changes in the 
laws and procedures because she had been on leave for an extended period of 
time. During that training, she did not wear a belt or vest. At the end of her 
training, one of the vests that had been ordered was available for her to wear.
        The 
vest, however, was too large, covering her gun, and coworkers and a supervisor 
commented on her appearance in the vest. Sympson then alleged that the stress of 
performing her duties with the oversized vest and the demeanor of her coworkers 
forced her to resign. In a letter dated February 27, 2003, Sympson informed DFW 
of her resignation, effective April 1, 2003. The other vest that had been 
ordered was on backorder and did not arrive until after Sympson had decided to 
resign.
        On 
July 16, 2003, Sympson filed her second dual claim with the EEOC and TCHR, 
alleging retaliation, gender discrimination, and age discrimination. Sympson 
sued DFW for constructive discharge and intentional infliction of emotional 
distress. She did not receive her Texas right-to-sue letter until after she had 
already filed suit in the 342nd District Court. DFW filed a plea to the 
jurisdiction, which was granted. The 342nd District Court found that DFW is a 
governmental entity, that it informed Sympson of the adverse act on August 13, 
2002, and that she filed suit on December 23, 2003. The trial court concluded 
that the claim of constructive discharge was barred by section 21.202 of the 
Labor Code[2] and that the trial court therefore 
lacked jurisdiction. In her appeal from the 342nd District Court, Sympson 
challenges only that court’s dismissal of the constructive discharge 
claim.  After the dismissal, on July 12, 2004, Sympson filed suit again in 
the 67th District Court. DFW again filed a plea to the jurisdiction.  The 
67th District Court granted DFW’s plea to the jurisdiction and dismissed the 
case, which Sympson also challenges.
        In 
six issues, Sympson now argues that the 342nd District Court erroneously (1) 
exercised its jurisdiction to reach the question of whether Sympson’s claims 
related to her July 16, 2003 charge of discrimination were barred under section 
21.202; (2) concluded that section 21.202 barred it from exercising jurisdiction 
over Sympson’s July 16, 2003 charge of discrimination; (3) concluded that the 
sole adverse employment action that formed the basis of the constructive 
discharge was the refusal to extend Sympson’s assignment to light desk duty; 
and (4) concluded that Sympson is limited to retaliation, gender discrimination, 
or both as the underlying illegal motives for DFW’s actions; and that the 67th 
District Court erroneously (5) concluded that res judicata barred the filing of 
the second lawsuit and (6) concluded that collateral estoppel barred the filing 
of the second lawsuit.
Standard of 
Review
        A 
plea to the jurisdiction contests the trial court’s authority to determine the 
subject matter of the cause of action.[3]  
Because the question of subject matter jurisdiction is a question of law, we 
review a trial court’s ruling on a plea to the jurisdiction de novo.[4]
Notice of Right 
To Sue
        In 
her first issue, Sympson argues that because she had not yet received a right to 
sue letter, the 342nd District Court did not have subject matter jurisdiction to 
reach the question of whether her claims related to her July 16, 2003 charge 
were barred under section 21.202.  We disagree.
        In 
Texas, receipt of a right to sue letter is not jurisdictional and is not 
mandatory before filing suit.[5]  Accordingly, we 
overrule Sympson’s first issue.
TCHR Complaint
        In 
her second and third issues, Sympson argues that the 342nd District Court erred 
by concluding that section 21.202 of the Labor Code barred it from exercising 
jurisdiction over her July 16, 2003 charge of discrimination and that the sole 
adverse employment action that formed the basis of the constructive discharge 
was the refusal to extend Sympson’s assignment to light desk duty.  We 
disagree.
        The 
Texas Commission on Human Rights Act (”Act”) establishes a comprehensive 
administrative review system for obtaining relief from unlawful employment 
practices.[6]  The Act provides three applicable 
limitations periods.  First, before suing in state court, an employee must 
exhaust her administrative remedies under the Act by first filing a complaint 
with the TCHR within 180 days of the alleged discriminatory act.[7]
        If 
the TCHR dismisses the complaint or determines that it will not file suit, the 
complainant may request a written notice of right to file a private, civil suit 
in the district court.[8]  Second, after the 
complainant receives the notice of right to sue from the TCHR, if the 
complainant chooses to file suit, she must do so within sixty days of the 
receipt of notice.[9]  Third, even if notice of a 
right to sue has not been received, a complainant must file a civil action on 
her claims within two years from the date she filed her initial charge with the 
TCHR, or her claim is barred by the statute of limitations.[10]
        The 
first limitations period, which is mandatory and jurisdictional, requires that a 
complaint be filed with the TCHR within 180 days after the alleged unlawful 
practice occurred.[11]  Failure to timely file 
an administrative complaint deprives Texas trial courts of subject matter 
jurisdiction.[12]
        The 
180-day limitations period for an employment discrimination complaint begins 
when the employee is informed of the allegedly discriminatory employment 
decision, not when that decision comes to fruition.[13]  
The fact that the employee might have felt the effects of the discriminatory 
treatment later or that the damage may have continued to occur for an extended 
period of time after the discriminatory treatment does not extend the 
commencement of limitations.[14]  Thus, the 
180-day limitations period for an employment discrimination complaint commences 
on the date the alleged unlawful employment practice occurred.[15]
        In 
this case, Sympson received a letter on August 13, 2002 from DFW stating that 
she would have to return to full duty on August 17, 2002 or her employment would 
be terminated. Although, Sympson did not actually return to work by that date 
and was not terminated, the basis of her complaint is that she was discriminated 
against by DFW when it required her to return to full rather than light or 
modified duty, as it had allegedly done for male employees.
        Although 
Sympson argues that the ill-fitting vest that was given to her to wear for her 
return to full duty in February 2003 caused her constructive discharge, DFW’s 
providing her that ill-fitting vest did not extend the commencement of 
limitations. That accommodation did not change the fact that Sympson was still 
required to return to full rather than modified duty. The ill-fitting vest was 
simply an effect of the alleged discriminatory treatment—requiring her to 
return to full duty rather than being reassigned or given modified duty as were 
male employees—or damage that continued to occur for an extended period of 
time after the discriminatory treatment. Sympson even testified that she knew as 
of or around October 15, 2002 that she would not be given any modified duty or 
be reassigned to areas that were less strenuous, although the male employees 
that had experienced injury had been given these modifications.
        Therefore, 
August 13, 2002, the date of the letter informing Sympson that she had to return 
to full duty or, at the very latest, October 15, 2002, the date she testified 
that discussions about returning to duty were held, was the day the 180-day 
period began. Sympson did not file her complaint until July 16, 2003. 
Consequently, Sympson did not file her complaint within 180 days of the date 
that the alleged unlawful employment practices occurred, and neither the 342nd 
District Court nor the 67th District Court had subject matter jurisdiction over 
Sympson’s complaint. Accordingly, we overrule Sympson’s second and third 
issues. Because we hold that the 342nd District Court did not have jurisdiction, 
we do not reach her fourth issue.[16]  Moreover, 
we do not reach Sympson’s fifth and sixth issues.[17]
Conclusion
        Having 
held that neither the 342nd District Court nor the 67th District Court had 
subject matter jurisdiction over Sympson’s claim, we affirm the trial 
courts’ judgments.
 
 
                                                                  LEE 
ANN DAUPHINOT
                                                                  JUSTICE
 
 
 
PANEL 
A:   DAUPHINOT, HOLMAN, and GARDNER, JJ.
 
DELIVERED: 
June 9, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
See Tex. Lab. Code Ann. § 
21.202 (Vernon 1996).
3.  
Bland ISD v. Blue, 34 S.W.3d 547, 554 (Tex. 2000).
4.  
Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998), cert. 
denied, 526 U.S. 1144 (1999); Levatte v. City of Wichita Falls, 144 
S.W.3d 218, 222 (Tex. App.—Fort Worth 2004, no pet.).
5.  
See Tex. Lab. Code Ann. § 
21.252; see also Rice v. Russell-Stanley, L.P., 131 S.W.3d 510, 
513 (Tex. App.—Waco 2004, pet. denied); Burgmann Seals Am., Inc. v. 
Cadenhead, 135 S.W.3d 854, 857–58 (Tex. App.—Houston [1st Dist.] 2004, 
pet denied); City of Houston v. Fletcher, 63 S.W.3d 920, 923 (Tex. 
App.—Houston [14th Dist.] 2002, no pet.).
6.  
Schroeder v. Tex. Iron Works, Inc., 813 S.W.2d 483, 485 (Tex. 1991).
7.  
Id.; see Tex. Lab. Code Ann. § 21.202(a).
8.  
Schroeder, 813 S.W.2d at 485.
9.  
Id.; see Tex. Lab. Code 
Ann. § 21.254.
10.  
Tex. Lab. Code Ann. § 21.256.
11.  
See Tex. Lab. Code Ann. § 
21.202; Cooper-Day v. RME Petroleum Co., 121 S.W.3d 78, 83 (Tex. 
App.—Fort Worth 2003, pet denied); Specialty Retailers, Inc. v. 
DeMoranville, 933 S.W.2d 490, 492 (Tex. 1996); Schroeder, 813 S.W.2d 
at 486.
12.  
Cooper-Day, 121 S.W.3d at 83; Czerwinski v. Univ. of Tex. Health 
Science Ctr., No. 14-02-00230-CV, slip op. at 5, 2002 WL 31718637, at *3 
(Tex. App.—Houston [14th Dist.] Dec. 5, 2002, pet. denied); Vincent 
v. W. Tex. State Univ., 895 S.W.2d 469, 473 (Tex. App.—Amarillo 1995, no 
writ).
13.  
Cooper-Day, 121 S.W.3d at 83; Specialty Retailers, 933 S.W.2d at 
493.
14.  
Cooper-Day, 121 S.W.3d at 83; Specialty Retailers, 933 S.W.2d at 
493.
15.  
Cooper-Day, 121 S.W.3d at 83; see also Tex. Lab. Code Ann. § 21.202; Speciality 
Retailers, 933 S.W.2d at 492-93.
16.  
See Tex. R. App. P. 47.1.
17.  
See id.  Sympson concedes that we do not reach her fifth and 
sixth issues if her first through fourth issues are overruled.