**Opinion issued September 5, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00052-CV

————————————

**FORT BEND INDEPENDENT SCHOOL DISTRICT, Appellant**

**V.**

**TYRA P. WILLIAMS, Appellee**

---

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 08-DCV-164954**

---

## MEMORANDUM OPINION

Tyra Williams sued her former employer, Fort Bend Independent School District, for unlawful employment practices under the Texas Commission on Human Rights Act. *See* TEX. LAB. CODE ANN. § 21.001−.556 (West 2006 & Supp. 2012). In this interlocutory appeal, the District challenges the trial court's denial of

its combined plea to the jurisdiction and motion for summary judgment based on immunity from suit and exhaustion of administrative remedies. We reverse and render judgment dismissing the case.

## Background

Tyra Williams worked for the Fort Bend Independent School District as a teacher for four years before she resigned. When she resigned, Williams filed suit alleging that she had suffered race discrimination, a hostile work environment, and retaliation, ultimately culminating in her constructive discharge.[1] Williams is an African-American female.

Williams's lawsuit alleges that she began to suffer discriminatory treatment when she was hired to teach English at Elkins High School, a school Williams describes as a "white school." According to Williams, other teachers in the English Department treated her "oddly" because of her race and suggested that she was not qualified to teach at Elkins because she previously worked at a "black school." At least one student was permitted to withdraw from Williams's class after complaining that "he didn't do black teachers." Williams alleges that, when she complained of unequal treatment to school administrators, she was subjected to a campaign of harassment, excessive scrutiny, and unwarranted discipline. Tempers

---

[1] Williams initially sued the District and eleven individuals in the District's employ; however, Williams later non-suited all of the individual defendants, leaving the District as the only remaining defendant.

flared at one disciplinary meeting, and Williams was escorted off campus and placed on paid administrative leave.[2]

After she was placed on administrative leave, Williams filed a charge of race discrimination and retaliation with the EEOC. While the EEOC charge was pending, Williams extended her absence from the school by taking temporary disability leave to recover from anxiety, panic attacks, and depression allegedly caused by work-related stress. When Williams returned from temporary disability leave, there was no longer a teaching position for her at Elkins. Williams alleges that the District discriminated and retaliated against her by removing her from her position at Elkins and replacing her with a less qualified white teacher. Williams also claims that she was treated differently from other similarly situated teachers because another teacher in the English Department, who is white, was not replaced after taking a leave of absence.

While she could not return to Elkins, Williams was not terminated, demoted, or paid less; instead, the District transferred her to M.R. Wood, the alternative high school to which Williams had requested reassignment in an employee grievance

---

[2]    The letter notifying Williams of her placement on administrative leave indicated that the leave was "due to an investigation of [Williams's] alleged misconduct." A grievance hearing officer instructed that the letter should be removed from Williams's file because the reason for the placement was not to allow further investigation but was to allow Williams to "cool off." The grievance hearing findings indicate that the leave period was for the remainder of the school day. Williams did not return the following day because she took temporary disability leave.

form. Williams alleges that she had to take another leave of absence when an M.R. Wood student verbally abused and physically intimidated her. Williams's doctor authorized her return to work the next school year "in a non-alternative setting," but the District initially placed her back at M.R. Wood. The District claimed the assignment was a mistake and offered Williams her choice of teaching positions from a list of schools with job openings. Williams filed an amended charge with the Equal Employment Opportunity Commission, alleging that the District's decision to reassign her to M.R. Wood was an act of retaliation.

Ultimately Williams was placed at Willowridge High School. Williams contends that the environment at Willowridge was immediately hostile, and she attributes that hostility to her opposition to race-based discrimination. After about six months at Willowridge, Williams, along with seventeen other teachers, was placed on a staff-reduction list for the next school year. Williams alleges that she was unfairly targeted for reduction. In support of her allegation, she offered the affidavit of a Willowridge parent recalling a conversation in which the Willowridge principal told the parent that Williams had been transferred to the school due to her disciplinary record and probably would not be returning. The District, on the other hand, presented evidence that the staff-reduction list was based primarily on the identification of teachers with the fewest years of continuous employment along with the school's needs. The District's evidence also

4

showed that the list included teachers of varying races. The District's contract with its teachers allows reassignments to other schools in the District.

Williams's inclusion on the staff-reduction list did not result in her termination; instead, she was offered another teaching contract for the next school year and was reassigned to another high school. This time, however, the school was located more than sixty miles from Williams's home. Williams resigned during the summer break before the new school year.

The District challenged the trial court's jurisdiction to hear Williams's claims in a combined plea to the jurisdiction and motion for summary judgment. The District alleged that Williams could not establish a prima facie case of discrimination or retaliation and failed to exhaust her administrative remedies with respect to her hostile work environment and constructive discharge claims. The District alternatively argued that neither race-based discrimination nor retaliation motivated its employment decisions. After considering the motion, Williams's response, the evidence, and the arguments of counsel, the trial court denied the District's plea. This appeal followed.

## Standards of Review

Although the District challenged the trial court's jurisdiction in a combined plea to the jurisdiction and motion for summary judgment, we review the filing as

a plea to the jurisdiction.[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2012). A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris Cnty. v. Sykes,* 136 S.W.3d 635, 638 (Tex. 2004). Whether a court has subject-matter jurisdiction is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

Typically, a plea to the jurisdiction challenges whether the plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *See Miranda*, 133 S.W.3d at 226. But a plea to the jurisdiction can also challenge the existence of those jurisdictional facts. *Id.* In such cases, we consider evidence as necessary to resolve the jurisdictional issue, even if that evidence also implicates the merits of the case. *Id.*

The trial court's review of a plea challenging the existence of jurisdictional facts "mirrors that of a traditional summary judgment motion." *Mission Consol. Indep. Sch. Dist. v. Garcia (Garcia II)*, 372 S.W.3d 629, 635 (Tex. 2012)

---

[3] Section 51.014(a)(8) of the Civil Practice and Remedies Code permits interlocutory appeals from the denial of a governmental unit's challenge to the trial court's subject-matter jurisdiction. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2012); *Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 349 (Tex. 2004) (observing that interlocutory appeal may be taken under section 51.014(a)(8) whether jurisdictional argument is presented in a plea to jurisdiction or summary-judgment motion because right of appeal is tied to substance of issue raised and not to any particular procedural vehicle).

(referencing TEX. R. CIV. P. 166a(c)); *Miranda,* 133 S.W.3d at 228 (same). The defendant must first meet the summary-judgment proof standard for its assertion that the trial court lacks jurisdiction; once the defendant meets its burden, the plaintiff is required to show that a disputed material fact exists regarding the jurisdictional issue. *Garcia II*, 372 S.W.3d at 635; *Miranda,* 133 S.W.3d at 228. "If a fact issue exists, the trial court should deny the plea. But if the relevant evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law." *Garcia II*, 372 S.W.3d at 635.

### Immunity from Suit and the TCHRA

Governmental immunity deprives a trial court of jurisdiction over suits against a governmental unit absent the legislature's consent to suit. *See Garcia II*, 372 S.W.3d at 636; *City of Houston v. Rhule*, 377 S.W.3d 734, 744 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The legislature has waived immunity from suit for employment discrimination and retaliation claims falling under the Texas Commission on Human Rights Act. *See* TEX. LAB. CODE ANN. § 21.051 (making it unlawful for "employer" to discriminate); § 21.055 (making it unlawful for "employer" to retaliate); § 21.002(8)(D) (defining "employer" to include governmental entities); *Mission Consol. Indep. Sch. Dist. v. Garcia (Garcia I)*, 253 S.W.3d 653, 660 (Tex. 2008) (concluding that legislature waived immunity for suits against school districts when plaintiff states claim for TCHRA violation).

7

Relevant here, the TCHRA prohibits an employer from refusing to hire, discharging, or otherwise discriminating against an employee in connection with compensation or the terms, conditions, or privileges of employment on the basis of race. *See* TEX. LAB. CODE ANN. § 21.051(1). An employer also commits an unlawful employment practice by retaliating or discriminating against a person who makes or files a charge of discrimination under the TCHRA. TEX. LAB. CODE ANN. § 21.055(2). Texas courts evaluate discrimination and retaliation claims using federal employment discrimination law, as the legislature, in adopting the TCHRA, intended to correlate state law with federal law. *Autozone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (citing *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005)); *see also Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) ("[T]he law governing claims under the TCHRA and Title VII is identical.").

There are two alternative methods by which a plaintiff can prove discrimination or retaliation. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476−77 (Tex. 2001) (adopting U.S. Supreme Court's alternative analyses for employment discrimination cases); *Dias v. Goodman Manufacturing Co.*, 214 S.W.3d 672, 676−77 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (applying same analyses in retaliation case). The first method is by direct evidence of the employer's actions or words. *Quantum Chem.*, 47 S.W.3d at 476. The

8

second method—the *McDonnell Douglas* burden-shifting scheme—applies in cases like this one, involving only circumstantial evidence of discrimination or retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802−05, 93 S. Ct. 1817, 1824−26 (1973); *see also Garcia II*, 372 S.W.3d at 634. Under *McDonnell Douglas*, courts presume discrimination or retaliation if the plaintiff meets her initial burden of establishing a prima facie case. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *Garcia II*, 372 S.W.3d at 634. The trial court has no jurisdiction if the plaintiff fails to demonstrate the prima facie elements of her case.[4] *Garcia II*, 372 S.W.3d at 635−38.

"Although the precise elements of this [prima facie] showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case 'is not onerous.'" *Id.* at 634. The plaintiff "must plead the elements of her statutory cause of action—here the basic facts that make up the prima facie case—so that the court can determine whether she has sufficiently alleged a TCHRA violation," but

---

[4]    Once the plaintiff establishes a prima facie case under *McDonnell Douglas*, the burden shifts to the defendant to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the employment action. 411 U.S. at 802, 93 S. Ct. at 1824. It then becomes the plaintiff's burden to show that the reason offered was a pretext for discrimination. *Id.* at 807, 93 S. Ct. at 1826–27; *Quantum,* 47 S.W.3d at 477. However, the Texas Supreme Court determined in *Garcia II* that only the prima facie elements of the plaintiff's case are jurisdictional. 372 S.W.3d at 635−38. Because our review of this interlocutory appeal is limited to the trial court's determination of its own subject-matter jurisdiction, we do not consider any matters beyond whether Williams presented a prima facie case of discrimination or retaliation.

"she will only be required to submit evidence if the [employer] presents evidence negating one of those basic facts." *Id.* at 637.

## A. Race discrimination

According to Williams, the District violated the TCHRA's prohibition against race-based discrimination. *See* TEX. LAB. CODE ANN. § 21.051. Williams's petition states in pertinent part:

> . . . [Williams] was fully qualified to perform her duties as an English teacher for [the District]. [Williams], a black female, was treated differently than similarly situated persons who were non-black by being subjected to hostile treatment by non-black employees and subjected to different rules based upon her race and/or color.
>
> [Williams] was subjected to excessive scrutiny while other non-black employees were not being treated in the same or similar manner . . . . Additionally, [Williams] was replaced by a non-certified white teacher while out on leave, where similarly situated teachers were not treated in the same manner. By being replaced, [Williams] was subject to adverse employment conditions. Said acts were taken against [Williams] because of her race. [Williams] was subject to disparate treatment on the basis of her race. [Williams's] treatment was in violation of TCHRA.

These allegations track the elements of a prima facie claim for race discrimination under the TCHRA, which are that Williams was (1) a member of a protected class, (2) qualified for her teaching position, (3) subjected to an adverse employment decision, and (4) replaced by someone outside of the protected class or treated less favorably than similarly situated members outside of the protected class. *Autozone*, 272 S.W.3d at 592 (citing *Ysleta Indep. Sch. Dist.*, 177 S.W.3d at 917).

10

The first and second elements of Williams's prima facie case are not in dispute in this appeal, as the District's jurisdictional arguments relate only to the third and fourth elements. We limit our discussion to the third element—whether the District subjected Williams to an adverse employment decision—because it is dispositive of the discrimination claim. The District argues that Williams's allegations of excessive scrutiny, replacement by a member outside of the protected class, and constructive discharge do not rise to the level of an adverse employment action as a matter of law. We agree.

The District correctly asserts that, in the discrimination context, not every employment decision is actionable as an unlawful employment practice. Anti-discrimination laws address "ultimate employment decisions," such as decisions on hiring, firing, promoting, or compensating; they do not address every decision made by employers that might have some tangential effect upon employment decisions. *See Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002); *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Poor performance evaluations, unjust criticism, and being placed on probation historically are not ultimate employment decisions. *See McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).

The excessive scrutiny and unwarranted discipline alleged by Williams fall within the category of employment decisions that are not ultimate decisions and

11

thus do not contribute to her prima facie case as adverse employment decisions. *See Winters*, 132 S.W.3d at 575 ("[A]dverse employment actions do not include 'events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee—anything which *might* jeopardize employment in the future.'") (quoting *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 2007)); *Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 143 (Tex. App.—Fort Worth 2000, pet. denied) ("Ultimate employment decisions that are actionable include decisions to hire, discharge, promote, compensate, or grant leave, but not events such as disciplinary filings, supervisor's reprimands, or even poor performance reviews.") (citing *Messer v. Meno*, 130 F.3d 130, 140 (5th Cir. 1997)). Williams's allegations that the District replaced her with a Caucasian teacher at Elkins and constructively discharged her by transferring her to a school more than sixty miles from her home, however, require closer examination.

We turn first to the matter of Williams's replacement. While the word "replaced" frequently is used as a synonym for "discharged" in employment discrimination cases, it is undisputed in this case that the District did not terminate Williams's employment when she returned from her leave of absence at Elkins. Rather, the District transferred Williams to a teaching position at another school, M.R. Wood. In some cases, a transfer may be the equivalent of a demotion and, hence, qualify as an adverse employment action. *See Alvarado v. Tex. Rangers*,

492 F.3d 605, 612 (5th Cir. 2007) (noting that transfer can be an adverse employment action if "the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement"); *see also Scott v. Godwin*, 147 S.W.3d 609, 617 (Tex. App.—Corpus Christi 2004, no pet.) (analyzing adverse-employment-action requirement for retaliation claim under different statute but explaining that employee must show transfer makes job objectively worse).

The District presented undisputed evidence that the transfer was not the equivalent of a demotion. Williams's title, salary, and job responsibilities were not reduced. The District also presented evidence that Williams requested an assignment at either M.R. Wood or one other school in the employee grievance form she filed after being denied permission to return to Elkins. Because the District's evidence negated a jurisdictional fact—whether the District subjected Williams to an adverse employment decision—it was incumbent upon Williams to respond with evidence raising a fact issue. *See Garcia II*, 372 S.W.3d at 637; *see also Cox v. Waste Mgmt. of Tex., Inc.*, 300 S.W.3d 424, 433 (Tex. App.—Fort Worth 2009, pet. denied) (observing, in sexual harassment case, that transfer unaccompanied by change in salary, benefits, job responsibilities, or career opportunities is insufficient as matter of law to qualify as adverse employment action); *Padilla v. Flying J, Inc.*, 119 S.W.3d 911, 915−16 (Tex. App.—Dallas

2003, no pet.) (holding that transfer that does not result in economic harm or significantly different job responsibilities is not actionable employment action). She complains in this Court that M.R. Wood was "an undesirable campus placement" and that her assignment there was "outside of her teaching certification," but she does not cite to any supporting evidence. For example, beyond the bare assertion in her brief that teaching at M.R. Wood was undesirable, Williams did not present evidence that the school was less prestigious than Elkins. Nor did she present evidence that teaching at M.R. Wood required fewer qualifications or involved fewer opportunities for advancement or increases in pay. We therefore conclude that the transfer from Elkins to M.R. Wood was not an adverse employment decision and thus does not contribute to Williams's prima facie case.

The District's same evidence influences our determination of whether Williams satisfied the adverse employment decision element by establishing that she was constructively discharged when she was placed on the staff-reduction list at Willowridge and transferred to a school sixty miles away. *See Winters*, 132 S.W.3d at 575 (observing that proof of constructive discharge permits employee who resigned to satisfy adverse employment decision element). "A constructive discharge occurs when an employer makes conditions so intolerable that an employee reasonably feels compelled to resign." *Hammond v. Katy Indep. Sch.*

14

*Dist.*, 821 S.W.2d 174, 177 (Tex. App.—Houston [14th Dist.] 1991, no writ). In determining whether an employee acted reasonably, courts consider the following factors, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a supervisor who subjected the plaintiff to discriminatory or harassing behavior; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation, or (7) any offers of early retirement on terms that would make the employee worse off whether or not she accepted the offer. *Winters*, 132 S.W.3d at 575 (citing *Barrow v. New Orleans S.S. Ass'n.*, 10 F.3d 292, 297 (5th Cir. 1994)); *Machado v. Goodman Mfg. Co., L.P.*, 10 F. Supp. 2d 709, 719 (S.D. Tex. 1997).

The District negated the only factual allegations in the petition that could support Williams's claim that her transfer constituted a constructive discharge. It directly negated the first, second, and third factors with undisputed evidence that Williams was not demoted, her salary was not reduced, and her job responsibilities remained the same; the only change was her location. The District also demonstrated that the staff-reduction list was prepared by its central administration using staffing-allocation formulas based primarily on seniority and the school's needs and that Williams agreed in her teaching contract that she was subject to reassignment within the District. This evidence negates the sixth factor—a

15

humiliation calculated to encourage Williams's resignation. Because Williams does not allege that the District assigned her to menial or degrading tasks or made any offers of voluntary resignation, the fourth and seventh factors also weigh against a finding of constructive discharge.

Williams's response did not raise a fact issue on whether she was constructively discharged. Although she presented evidence that she felt compelled to resign when she was placed on the staff-reduction list at Willowridge and subsequently transferred to a campus more than sixty miles from her home, her subjective feelings are insufficient to raise a fact issue as to whether another similarly situated employee reasonably would have felt compelled to resign. *See Hammond*, 821 S.W.2d at 177; *Robinson v. Waste Mgmt. of Tex.*, 122 F. App'x 756, 758 (5th Cir. 2004) (explaining that "subjective state of mind of the employee is irrelevant" to constructive discharge analysis). Neither did Williams present any evidence that her placement on the staff-reduction list or her reassignment to a more distant campus was calculated by the District to encourage her resignation. For example, there is no evidence that there were openings closer to her home or that similarly situated white employees from Willowridge were offered positions at schools in more desirable locations. Finally, she did not show how much farther the new school was from her home than the other District schools where she taught

or where she could have been assigned.[5] We therefore conclude that there is not a fact issue with regard to whether Williams was constructively discharged.

Accordingly, we hold that the relevant undisputed evidence presented by the District negates the adverse employment decision element of Williams's prima facie case for race discrimination. Because Williams has not established a prima facie case of race discrimination, the trial court lacks subject-matter jurisdiction over that claim and erred in denying the District's plea.

## B. Retaliation

Williams's lawsuit also includes a claim for violation of the TCHRA's prohibition against retaliation. *See* TEX. LAB. CODE ANN. § 21.055. To establish a prima facie case of retaliation under the TCHRA, Williams had to show that: (1) she engaged in a protected activity; (2) the District took an adverse employment action; and (3) the District did so because of her participation in the protected activity. *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *see also Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2007). The District does not dispute that Williams engaged in a protected activity. Again, the District's jurisdictional challenge relates

---

[5] The record indicates in various places that Williams lived either in Pearland or near downtown Houston, but the record does not include the dates of residence at either place or the distance between either those places and the various schools at which Williams taught.

17

primarily to whether Williams suffered an adverse employment action.[6] Williams responds that the District took actions that might well dissuade a reasonable teacher from opposing discrimination by placing her on paid administrative leave, denying her the opportunity to regain employment at Elkins, reassigning her to M.R. Woods after a student verbally abused and physically intimidated her there, subjecting her to excess scrutiny, placing her on the Willowridge staff-reduction list, and reassigning her to a campus located sixty miles from her home.

Although there is significant overlap between the facts alleged in support of Williams's discrimination and retaliation claims, our holding that Williams did not suffer an adverse employment decision in the discrimination context does not dictate the same conclusion in the retaliation context. Both federal and Texas courts afford adverse employment actions a broader scope in the retaliation context. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006); *Montgomery Cnty. v. Park*, 246 S.W.3d 610, 614 (Tex. 2007) (approving of Supreme Court's reasoning in *Burlington* as applied to retaliation claim under Texas Whistleblower Act). "An employer's action is an adverse employment action for purposes of a retaliation claim when it is harmful to the point that it could 'dissuade a reasonable worker from making or supporting a

---

[6] The District also challenges whether there is a causal connection between Williams's protected activity and its allegedly retaliatory acts, but we do not reach this issue given our resolution of the retaliation claim on other grounds.

18

charge of discrimination.'" *Cox*, 300 S.W.3d at 438 (quoting *Burlington N.*, 548 U.S. at 57, 126 S. Ct. at 2405).

For the reasons we stated in our discussion of Williams's discrimination claim, the District's undisputed evidence that Williams never suffered any change in title, salary, or job responsibilities and that she contractually agreed that she was subject to reassignment within the District satisfied the District's burden to negate the prima facie element of an adverse employment action and shifted the burden to Williams to raise a fact issue. She has failed to direct us to any evidence indicating that her transfer from Elkins to M.R. Wood or her placement on the staff-reduction list at Willowridge made her circumstances objectively worse. Likewise, although Williams was unwilling to work at a school located sixty miles from her home, she presented no evidence that would support a conclusion the District could dissuade a reasonable teacher from making a discrimination claim by assigning her to a more remote campus.

The only arguably adverse employment action taken by the District was placing Williams on paid administrative leave. In *McCoy v. City of Shreveport*, the Fifth Circuit suggested that placing an employee on paid administrative leave may be, but is not necessarily, evidence of adverse employment action in a retaliation case. *See* 492 F.3d at 560−61. But unlike in *McCoy*, there is no evidence here of how the administrative leave impacted Williams's employment. For instance,

Williams does not direct us to any evidence regarding what stigma accompanied placement on administrative leave, whether she had any control over her reinstatement, or whether placement on administrative leave negatively affected her chances for future advancement. When she returned to work, she was assigned to a school that she requested.

We conclude that there is not a fact issue as to whether Williams suffered an adverse employment action for purposes of her retaliation claim. Because Williams has not established a prima facie case of retaliation, we hold the trial court lacks subject-matter jurisdiction over that claim and erred in denying the District's plea.

### Exhaustion of Administrative Remedies

The District further argues that the trial court lacks subject-matter jurisdiction over Williams's remaining claims for hostile work environment and constructive discharge because she failed to exhaust her administrative remedies by omitting those claims from her EEOC charge. Williams responds that her EEOC charge, read broadly, encompassed the challenged claims, but even if it did not, the hostile work environment and constructive discharge claims could reasonably be expected to grow out of the investigation of the discrimination and retaliation claims stated in the charge.[7]

---

[7] Williams also asserts that the continuing-violation doctrine saves her claims related to events occurring after she filed her EEOC charge, including events contributing to the hostile work environment and her resignation. The continuing-

20

The exhaustion of administrative remedies is a jurisdictional prerequisite to filing suit for unlawful employment practices. *See City of Waco v. Lopez*, 259 S.W.3d 147, 149 (Tex. 2008); *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 446 (Tex. 2004); *Santi v. Univ. of Tex. Health Sci. Ctr. at Houston,* 312 S.W.3d 800, 804 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Under the TCHRA, the exhaustion of administrative remedies begins with the filing of a charge of discrimination with either the Texas Workforce Commission or the EEOC.[8] *See* TEX. LAB. CODE ANN. §§ 21.202, .208, .254, .256. The charge notifies the employer of the claim, narrows the issues, and gives the employer and the

violation doctrine is an exception to the 180-day limitations period for filing an administrative charge of unlawful employment practices. *Santi v. Univ. of Tex. Health Sci. Ctr. at Houston,* 312 S.W.3d 800, 804−05 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (observing that failure to timely file administrative complaint deprives trial court of subject-matter jurisdiction). Generally, the limitations period begins upon the unlawful act's occurrence, not when the act's consequences are felt. *See Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 491 (Tex. App.—Houston [1st Dist.] 2006, no pet.). By relying on the continuing-violation doctrine, a claimant may avoid a limitations bar if she "can show a series of related acts, one of which falls within the limitations period[.]" *Huckabay v. Moore*, 142 F.3d 233, 238−39 (5th Cir. 1998); *see also Davis*, 226 S.W.3d at 493 (explaining that, "[u]nder the continuing violation theory, a plaintiff must show an organized scheme leading to and including a present violation so that it is the cumulative effect of discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action."). But the District does not argue that Williams asserted her hostile work environment and constructive discharge claims too late; rather, the District argues that Williams did not assert those claims at all. Because there is no issue on appeal regarding whether any of Williams's claims are time barred, we do not reach the applicability of the continuing-violation doctrine.

[8]    "[C]harges that are filed by Texas employees with the EEOC are contemporaneously filed with the TWC." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 504 n.4 (Tex. 2012) (citing 42 U.S.C. § 2000e−5e(d)).

investigating agency an opportunity to resolve the dispute. *Lopez v. Tex. State Univ.,* 368 S.W.3d 695, 700–01 (Tex. App.—Austin 2012, pet. denied) (citing *Pacheco v. Mineta,* 448 F.3d 783, 789 (5th Cir. 2006); *Manning v. Chevron Chem. Co., LLC,* 332 F.3d 874, 878−79 (5th Cir. 2003)).

The factual statement in the administrative charge is crucial because TCHRA litigation is limited in scope to claims stated in the charge and factually related claims that could reasonably be expected to grow out of the investigation of the stated claims. *See Lopez,* 368 S.W.3d at 701; *Santi,* 312 S.W.3d at 805; *Bartosh v. Sam Houston State Univ.,* 259 S.W.3d 317, 321 (Tex. App.—Texarkana 2008, pet. denied). Because most complaints are made by persons unfamiliar with the rules of pleadings, courts construe the charge liberally; however, the charge must contain adequate facts to put the employer on notice of the existence and nature of the claims. *Santi,* 312 S.W.3d at 805 (citing 29 C.F.R. § 1601.12(b) (2009) ("a charge is sufficient when . . . sufficiently precise to identify the parties, and to describe generally the action or practices complained of")). Courts will not read the charge to include facts that were initially omitted. *Cnty. of Travis ex rel. Hamilton v. Manion,* No. 03–11–00533–CV, 2012 WL 1839399, at *4 (Tex. App.—Austin May 17, 2012, no pet.) (mem. op.) (citing *Harris v. David McDavid Honda,* 213 F. App'x 258, 261 (5th Cir.2006) (per curiam)).

On her original charge form, in the space titled "DISCRIMINATION BASED ON *(Check appropriate box(es))*," Williams checked race and retaliation. There are no boxes for hostile work environment or constructive discharge. For the "Date(s) Discrimination Took Place," Williams listed a seven-month period during which she worked at Elkins. Williams did not check the box for a "continuing violation." Within her description of the "particulars" of her charge, Williams stated:

I.     I was employed by the [District] in February 2006. I had previously worked for the [District] and returned. My position is a teacher in the English Department. [The District] is a public school district that employs more than 15 employees.

II.     Beginning in August 2006 and continuing I have been subjected to unfair disciplinary action by Barbara Whittaker, Principal.

III.     I had complained about the environment in the English Department and advised Paula Jay, Department Chair, that I believed there was racism in the department. Jay told me that it may be my minority perspective but there was no racism. After this I began to experience the frequent and unfair disciplinary action.

IV.     Whittaker came to a department meeting on September 19, 2006. After the meeting I sent her an email and then she had me taken from the classroom to her office. Tim Gloster, Assistant Principal, brought me to the office and remained during the meeting. As [a] result of the meeting I was removed from the campus and placed on leave of absence.

V.     I believe I have been discriminated against because of my race, Black, and retaliated against because of my complaints of racism, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Williams amended her charge approximately three months later by submitting a separate type-written page containing these allegations:

> . . . On October 17, 2006, my doctor required me to take a stress leave due to the harassment and mental anguish imposed on me by Principal Barbara Whittaker and the Assistant Principal, Tim Gloster. On November 3, 2006, I was informed that my services were no longer needed at Elkins. No reason was provided for this action. I attempted to discuss this issue with Mr. Alfred R. Ray, Area Superintendent, but to no avail.

> I was also not allowed to retrieve my personal belongings. I was told that my belongings would be mailed to me. However, the school failed to return many of my valuables back to me.

> In December 2006, I anticipated being released to work from my medical leave of absence . . . . However, Ms. Connie Jones, Human Resources Director, informed me that I had to reapply for a position. This was against [the District's] policies and procedures. Nonetheless, I reapplied and was assigned to work at the M.R. Wood Alternative School's District Expulsion Program (DEP). Ms. Lydia Wright, Associate Principal, informed me that she would offer me a position as an English III Teacher at the Thurgood Marshall High School. However, Fort Bend ISD denied me this opportunity with no reason given.

> Due to my discriminatory assignment and the hostile working environment at M.R. Wood Alternative School, my doctor had to put me out on another [leave of absence], effective January 15, 2007.

> I believe that I have been retaliated against for participating in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

## A.    Hostile work environment

William's petition alleges "campaign of harassment based on her race" and conduct by school and District administrators that "created an intimidating, hostile

24

or offensive work environment." According to the District, Williams's charge and amended charge only state claims for discrimination and retaliation and do not contain any factual allegations of hostile work environment based on race.

The TCHRA allows suits against a governmental unit only when it discriminates because of a protected status. TEX. LAB. CODE ANN. § 21.051; *see Tex. Dep't of Criminal Justice v. Cooke*, 149 S.W.3d 700, 704 (Tex. App.—Austin 2004, no pet.) ("The Act here allows suit against a governmental unit only when it discriminates *because of* race.") (emphasis in original). Similarly, a claim of hostile work environment entails harassment based on the plaintiff's protected status. *Twigland Fashions, Ltd. v. Miller*, 335 S.W.3d 206, 218 (Tex. App.—Austin 2010, no pet.); *Bartosh*, 259 S.W.3d at 324. Although Williams used the term "hostile work environment" once in her amended charge, neither the charge nor amended charge contains any suggestion that the "hostile" conditions she suffered were based on race. Rather, the charge and amended charge detail a series of discrete acts allegedly taken in retaliation for Williams's original outcry of discrimination in the Elkins English Department. Discrete acts forming the basis for discrimination or retaliation claims should be kept conceptually distinct from hostile work environment claims. *Olivarez v. Univ. of Tex. at Austin*, No. 03-05-00781-CV, 2009 WL 1423929, at *4 (Tex. App.—Austin May 21, 2009, no pet.) (mem. op.) (citing *Brierly v. Deer Park Union Free Sch. Dist.*, 359 F. Supp. 2d

275, 293 (E.D.N.Y. 2005); *Parker v. State of Del. Dep't of Pub. Safety*, 11 F. Supp. 2d 467, 475 (D. Del. 1998)). Consequently, we conclude that Williams did not state facts that give rise to a claim of severe or pervasive harassment based on her status as a member of a protected class or facts that could reasonably be expected to lead the EEOC to investigate a hostile work environment claim. We therefore hold that Williams failed to exhaust her administrative remedy with respect to her hostile work environment claim. As a result, the trial court erred in denying the District's plea to the jurisdiction because the trial court lacked jurisdiction over Williams's hostile work environment claim.

## B.    Constructive discharge

Williams's petition also includes a separately stated claim against the District for constructive discharge. Constructive discharge occurs when an employer makes conditions so intolerable that an employee reasonably feels compelled to resign. *See Baylor Univ. v. Coley*, 221 S.W.3d 599, 605 (Tex. 2007) (citing *Penn. State Police v. Suders*, 542 U.S. 129, 141, 124 S. Ct. 2342, 2351 (2004), for its definition of "constructive discharge" as "an employee's reasonable decision to resign because of unendurable working conditions"). Williams's charge does not include any allegation that her working conditions were intolerable. Moreover, the constructive-discharge facts alleged by Williams in her petition relate exclusively to her employment at Willowridge. She asserts that the working

26

conditions at Willowridge became intolerable when school administrators placed her on the staff-reduction list before other less qualified teachers with fewer years' experience and subjected her unwarranted scrutiny and criticism. But the facts stated in Williams's charge and amended charge concern only her employment at Elkins and M.R. Wood. We conclude that the charge contains no allegations that would serve to put the District on notice that Williams was asserting a claim for constructive discharge arising from her employment at Willowridge. We further conclude that the factual allegations in the charge and amended charge could not reasonably be expected to lead the agency to investigate a constructive discharge claim; in fact, the agency's investigation had concluded and Williams had received her right to sue letter before the conduct giving rise to her resignation occurred.

Consequently, we conclude that Williams failed to exhaust her administrative remedy regarding her constructive discharge claim. As a result, the trial court lacked jurisdiction over Williams's constructive discharge claim, and we hold that the trial court erred in denying the District's jurisdictional plea.

## Conclusion

Having concluded that the trial court lacks subject-matter jurisdiction over Williams's claims, we reverse and render judgment dismissing the case.

27

Harvey Brown
Justice

Panel consists of Justices Jennings, Brown, and Huddle.