Kristi SANTI, Appellant,

v.

The UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, Appellee.

No. 01–09–00186–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 19, 2009.

Mark Siurek, Warren & Siurek, L.L.P., Houston, TX, for Appellant.

Frank Anthony King, General Litigation Division, Madeleine Bullard Connor, Assistant Attorney General, Austin, TX, for Appellee.

Panel consists of Justices KEYES, ALCALA, and HANKS.

## OPINION

ELSA ALCALA, Justice.

Appellant, Kristi Santi, appeals the trial court's granting of the plea to the jurisdiction filed by appellee, the University of Texas Health Science Center at Houston ("the University"). Santi filed this suit against her former employer, the University, pursuant to the Texas Commission on Human Rights Act ("the Act").[1] In her sole issue, Santi contends the trial court erred by granting the University's plea to the jurisdiction. We conclude the trial court did not err by granting the University's plea to the jurisdiction. We affirm the judgment of the trial court.

## Background

The University employed Santi for approximately five years as a non-tenured associate professor in the Developmental Division of the Department of Pediatrics and as research faculty in the Center for Academics and Reading Skills. On April 14, 2006, she reported a hostile work environment created as a result of gender-related discrimination by her direct supervisor, Barbara Foorman, affording male peer faculty members advantages not allowed to female faculty members.

On June 1, the University informed Santi that it would not renew her contract after August 31, 2006, even though she received the highest possible ranking on her annual faculty reviews. Eleven days after she was told her contract would not be renewed, Santi began negotiations with the University on June 12, 2006 to obtain a license to market and produce derivatives of materials she co-authored or co-produced while employed at the University.

The next day, on June 13, Santi filed a formal complaint of discrimination. According to Santi, the negotiations to obtain a license to develop derivative materials proceeded very positively for approximately a week, then communication ceased. On December 20, 2006, the University informed Santi that it would not participate in any licensing agreement.

On March 5, 2007, Santi filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission (EEOC). Pursuant to a Work Sharing Agreement with the Texas Workforce Commission— Civil Rights Division ("the Commission"), the EEOC transferred Santi's charge to the Commission for investigation. The Commission issued a Dismissal and Notice of Right to File a Civil Action on October 23, 2007. The EEOC adopted the Commission's findings and issued a Dismissal and Notice of Rights on December 6, 2007. The following day, Santi filed this suit.

## Plea to the Jurisdiction

In her sole issue, Santi contends the trial court erred by granting the University's plea to the jurisdiction because her claim was properly before the court, she exhausted her administrative remedies, she asserted a continuing violation, and her claim for retaliation was actionable.

### A. Standard of Review

■ A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Whether the plaintiff has alleged facts that demonstrate subject-matter jurisdiction is a question of law, which we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). Although we are not to reach

1. Tex. Lab.Code Ann. §§ 21.001–.556 (Vernon 2006).

the merits of the plaintiff's case, when the plea to the jurisdiction challenges the existence of jurisdictional facts, we consider the relevant evidence submitted by the parties that is necessary to resolve the jurisdictional issue. *Id.* at 227. This procedure generally mirrors that of a summary judgment under rule of civil procedure 166a(c). *Id.* at 228; *see* TEX.R. CIV. P. 166a(c). The plaintiff has the initial burden to plead facts affirmatively showing the trial court has subject matter jurisdiction. *See Miranda,* 133 S.W.3d at 226. The governmental unit then has the burden to assert that the trial court lacks subject matter jurisdiction and must support that contention with evidence. *Id.* at 228. If it does so, the plaintiff must raise a material fact issue regarding jurisdiction to survive the plea to the jurisdiction. *Id.* If the evidence creates a fact issue concerning jurisdiction, the plea to the jurisdiction should be denied. *Id.* If the evidence is undisputed or fails to raise a fact issue concerning jurisdiction, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.*

**B. Law Concerning Violations of the Texas Commission on Human Rights Act**

The Act prohibits "unlawful employment actions." An employer commits an unlawful employment action if the employer "fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment" because of the employee's sex. TEX. LAB.CODE ANN. § 21.051(1) (Vernon 2006). An employer also commits an unlawful employment action if the employer retaliates or discriminates against a person who opposes a discriminatory practice or who makes or files a charge or files a complaint under

the Act. *Id.* § 21.055 (Vernon 2006). We look to federal law to interpret the Act's provisions because, "[b]y adopting the Act, the Legislature 'intended to correlate state law with federal law in employment discrimination cases.'" *AutoZone, Inc. v. Reyes,* 272 S.W.3d 588, 592 (Tex. 2008) (citations omitted).

"Texas law requires that a complaint of unlawful employment practices be filed with the EEOC or the Texas Commission on Human Rights within 180 days after the alleged unlawful employment practice occurred." *Davis v. Autonation USA Corp.,* 226 S.W.3d 487, 491 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (citing *Specialty Retailers, Inc. v. DeMoranville,* 933 S.W.2d 490, 492 (Tex.1996)); *see* TEX. LAB.CODE ANN. § 21.202 (Vernon 2006) (entitled "Statute of Limitations"). "This time limit is mandatory and jurisdictional." *Davis,* 226 S.W.3d at 491 (citing *Schroeder v. Tex. Iron Works, Inc.,* 813 S.W.2d 483, 486 (Tex.1991)). "Failure to timely file an administrative complaint deprives Texas trial courts of subject-matter jurisdiction." *Id.* (citing *Czerwinski v. Univ. of Tex. Health Sci. Ctr.,* 116 S.W.3d 119, 122 (Tex. App.-Houston [14th Dist.] 2002, pet. denied); *Vincent v. W. Tex. State Univ.,* 895 S.W.2d 469, 473 (Tex.App.-Amarillo 1995, no writ)). In determining when an unlawful employment practice occurred, " '[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful.'" *Davis,* 226 S.W.3d at 491 (quoting *Del. State Coll. v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980)).

An exception to the application of the 180–day limitations period is the continuing violation doctrine. *See id.* at 493. The continuing violation doctrine applies when an unlawful employment practice manifests itself over time, rather than as a

series of discrete acts. *Id.* (citing *Wal–Mart Stores v. Davis,* 979 S.W.2d 30, 31 (Tex.App.-Austin 1998, pet. denied)). Under the continuing violation theory, a plaintiff must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action. *Id.* (citing *Cooper–Day v. RME Petroleum Co.,* 121 S.W.3d 78, 87 (Tex.App.-Fort Worth 2003, pet. denied)); *see also Huckabay v. Moore,* 142 F.3d 233, 239 (5th Cir.1998) (describing continuing violation as "a persisting and continuing system of discriminatory practices in promotion or transfer that produces effects that may not manifest themselves as individually discriminatory except in cumulation over a period of time"). For example, a claim of a hostile work environment is a continuing violation, while "termination, failure to promote, denial of transfer, or refusal to hire" are discrete acts. *Nat'l Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 114, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002).

A lawsuit under the Act is limited to claims made in the charge or complaint filed with the EEOC or the Commission and factually related claims that can reasonably be expected to grow out of the commission's investigation. *Bartosh v. Sam Houston State Univ.,* 259 S.W.3d 317, 321 (Tex.App.-Texarkana 2008, pet. denied). In reviewing a claimant's charge of discrimination before the EEOC or Commission, we should construe them with "utmost liberality," although the charge must contain an adequate factual basis so that it puts the employer on notice of the existence and nature of the charges. *Id.* (citing *Preston v. Tex. Dep't of Family & Prot. Servs.,* 222 Fed.Appx. 353, 356 (5th Cir.2007)). "The crucial element of a charge of discrimination is the factual statement contained" in the administrative complaint. *Id.* (quoting *Preston,* 222 Fed. Appx. at 356); *see also* 29 C.F.R. § 1601.12(b) (2009) ("a charge is sufficient when ... sufficiently precise to identify the parties, and to describe generally the action or practices complained of").

## C. Analysis

Within her sole issue, Santi asserts the following reasons in support of her appeal:

(1) Her discrimination claim "was properly before the court";

(2) She timely filed her claims; and

(3) "[B]oth pre- and post-termination retaliation are actionable."

### 1. Scope of Santi's Claims

Santi asserts her claim for gender discrimination was properly before the court because it was included within her claim of retaliation filed with the EEOC.

On her charge of discrimination filed with the EEOC in this case, in the section that reads "CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es)),*" Santi marked the box next to "RETALIATION," but not the box next to "SEX." However, within her description of the particulars of her charge, Santi stated, "On April 14, 2006, I reported a hostile work environment created as a result of gender-related discrimination by my direct supervisor Barbara Foorman ("Foorman") which afforded male peer faculty members ... advantages not allowed female Division faculty members." Santi also alleged that, after she learned her contract would not be renewed, she discovered a male faculty member would replace her as the director of the project she had been working on. Santi further stated she filed a formal complaint of gender discrimination after she learned of the non-renewal of her contract. Santi specifically alleged that although the University denied her the right to develop and license derivative ma-

terials, at least two male counterparts were allowed by the University to do so. The Commission investigated the claims and sent a "pre-determination letter" to Santi. The Commission stated, "Based on our review of the available evidence, we do not believe it can be established that the employer discriminated against you based on retaliation *or any other reasons prohibited by the laws we enforce.*" (Emphasis added).

Santi's charge included an adequate factual basis to put the University on notice that Santi was complaining of discrimination based upon her gender. Santi alleged instances when she was treated differently from male counterparts and described making both informal and formal complaints of gender discrimination to the University. *See* 29 C.F.R. § 1601.12(b) (charge sufficient if it "describe[s] generally the action or practices complained of"). We hold the trial court did not lack jurisdiction over Santi's gender discrimination claim because she included allegations of gender discrimination in her charge to the EEOC.

We sustain this portion of Santi's sole issue.

### 2. Timeliness of Filing

Santi contends December 20, 2006 is the date from which limitations should be calculated and, calculated from that date, her filings were timely. Santi states that "rather than June 1, 2006, as proposed by the University as the date Santi's claims arose, the definitive date was December 20, 2006, when Santi learned that the University would not grant her a licensing agreement." (Record citations omitted). Santi also contends the University's actions constituted a "continuing violation" and, therefore, calculating limitations from the date of the last discriminatory act on December 20, 2006 was proper.

It is undisputed that on June 1, 2006, more than 180 days from the date Santi filed her complaint with the EEOC, Santi was informed that her contract would not be renewed and she would no longer be employed by the University after August 31, 2006. Therefore, unless Santi shows this is a continuing violation, her claim is barred by limitations.

Santi contends she has shown a continuing violation because December 20, 2006, the date the University informed Santi it would not grant her the right to license derivative materials, fell within the 180 day period. Santi did not allege a continuing violation or an "organized scheme leading to and including a present violation." *See Davis,* 226 S.W.3d at 493. Rather, she complains of two discrete acts separated by over 6 months—the decision to not renew her contract in June and, over 6 months later, in December, the denial of a right to attempt to license derivative materials. *See Morgan,* 536 U.S. at 114, 122 S.Ct. at 2073 (termination is discrete act). We conclude Santi did not allege facts to raise the issue of a persisting and continuing system or a continuing scheme as required to show a continuing violation. *See Davis,* 226 S.W.3d at 491; *see also Miranda,* 133 S.W.3d at 226 (plaintiff has initial burden to plead facts affirmatively showing trial court has subject matter jurisdiction). We hold the trial court did not err by granting the University's plea to the jurisdiction with respect to Santi's claim for discrimination based upon the decision not to renew her contract.

### 3. Post–Termination Retaliation

Santi further contends the University's refusal to grant her a right to license derivative materials is an adverse employment action and is actionable even though it occurred post-termination.

Post-termination actions may be the subject of a retaliation claim. *See*

*Robinson v. Shell Oil Co.,* 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 885 n. 1 (7th Cir.1996). An adverse employment action includes an action "in connection with compensation." TEX. LAB. CODE ANN. § 21.051(1). In her brief, Santi asserts "obtaining a licensing agreement is an employment benefit." However, Santi did not allege, either in her charge of discrimination or in her original petition, that the right to license derivative materials was part of her compensation. Concerning the licensing agreement, Santi alleged,

> As an integral part of academic appointment, it was common for research materials to be licensed to a third party for marketing and distribution at which point the author(s) and the University would share in royalties from the resulting sales. Thereafter, derivative materials ancillary to the original materials could be developed and further licensed resulting in additional revenues to the University. Because of this arrangement, the University, as the author's employer, must "grant" the author or co-authors the "right" to develop derivative materials. Nevertheless, it was good business practice to grant an author or co-author the "right" to develop derivative materials for licensing because there was no cost to the University associated with such development and the University shared in royalties generated by sales of the derivative materials.

Nowhere does Santi refer to this "right" as part of her compensation. Furthermore, Santi's "Memorandum of Appointment," submitted to the trial court as evidence on the plea to the jurisdiction states her base compensation and her total compensation. The two numbers are the same. The memorandum does not mention the right to license derivative materials or any other form of compensation. The University's denial to grant Santi the right to license derivative materials is not an action "in connection with compensation" and, therefore, does not fall within the waiver of sovereign immunity provided by the Act. The trial court did not err by granting the University's plea to the jurisdiction on the claim of retaliation for failure to grant the right to license derivative materials. *See Miranda,* 133 S.W.3d at 226 (plaintiff has initial burden to plead facts affirmatively showing trial court has subject matter jurisdiction).

### Conclusion

We affirm the judgment of the trial court.