**Opinion issued August 1, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-22-00212-CV**

———————————

**CHRISTINA  DREW, Appellant**

**V.**

**CITY OF HOUSTON, Appellee**

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-68794**

---

## O P I N I O N

Christina Drew sued her former employer, the City of Houston ("City"), alleging claims for sexual harassment, retaliation, and hostile work environment. She claimed that the City's actions and inactions had resulted in her constructive discharge.

The City filed a plea to the jurisdiction, asserting that its proffered evidence established that the trial court lacked subject matter jurisdiction because Drew failed to exhaust her administrative remedies, barring her suit against the City. The City also moved for summary judgment on Drew's claims. After a hearing, the trial court orally announced that it granted the City's plea to the jurisdiction based on timeliness. The trial court then signed an order granting both the City's plea to the jurisdiction and motion for summary judgment. We affirm.

## Background

Drew was employed by the City's Department of Neighborhoods as a Code Enforcement Officer Trainee, responsible for enforcing city ordinances on properties in Houston. On Friday, November 9, 2018, Drew was at a jobsite with several crewmembers, including Chris Varela. Varela asked for a ride back to the office. Drew informed him that she was not going immediately to the office, but instead, she had to make a stop along the way. Varela agreed to go with her. When Drew arrived in a store parking lot, Varela grabbed her and kissed her. She told him not to do so and went into the store. Drew returned to the car and continued driving with Varela as her passenger. In the car, Varela tried to convince Drew to go somewhere so they could talk, but instead Drew took him back to the jobsite. According to Drew, Varela got out of her car at the jobsite and slammed the door. She believed he was angry that she did not return his advances.

2

Drew's supervisor, who was unaware of what had happened, asked her to drive Varela back to the office. Drew and Varela returned to the car. While Drew was driving, Varela pulled out his penis and started masturbating. He grabbed Drew's hand from the steering wheel and tried to get her to touch his penis. Drew continued driving back to the office.

Later that Friday afternoon, Drew texted her supervisor and asked him to call her. She did not report the incident to her supervisor until the following Tuesday.[1] The next day, she reported the incident to Reginald Harris, her next level supervisor and Deputy Assistant Director for the Department of Neighborhoods. He asked Drew to put her complaint in writing, which she did in the form of an email. Harris forwarded the email to the City's Inspector General ("OIG"), who initiated an investigation. Harris placed Varela on relief-of-duty status during the investigation, suspending him with pay. Varela never returned to work. A few days later, Harris delivered a no-contact order to Varela, instructing him not to have any contact with Drew.

In January 2019, Drew emailed Harris to (1) complain that other employees were spreading rumors about her at work, and (2) request information about the Employee Assistance Program ("EAP") so she could obtain counseling. Harris

---

[1] Monday, November 12, 2018 was Veteran's Day, a City holiday.

3

promptly responded with the information. He also reminded Drew that Varela had been relieved from work duty and that the OIG was investigating the case.

A few weeks later, the Department of Neighborhoods was tasked with visiting abandoned buildings that were slated for demolition to confirm whether the buildings remained in existence. The project was part of a special initiative from the mayor. Ten code enforcement officers, including Drew, were picked for the project. Their job was to drive to a list of addresses and take pictures, verifying the structures on the properties were still standing. Harris testified that Drew was selected based on her workload. The addresses each employee was tasked with visiting were assigned by a central scheduler.

On January 22, 2019, the OIG sustained Drew's allegations against Varela, and Drew was notified by letter. On the same day, Drew contacted Harris saying she did not feel safe using her assigned parking space and requested another parking location closer to her home where she could access her City-issued vehicle. Harris assigned Drew to a new parking location.

Following the OIG decision, Harris began the process to terminate Varela's employment, but Varela resigned on February 7, 2019, before the process was completed. Drew voluntarily resigned her employment with the City on February 4, 2019.

Drew filed her charge with the EEOC on August 5, 2019, asserting sex discrimination, retaliation, and hostile work environment. She sued the City alleging the same claims in October 2020. The City answered and filed a plea to the jurisdiction and motion for summary judgment. At the conclusion of a hearing, the trial court granted the City's plea to the jurisdiction, stating it was doing so based on timeliness. The court signed an order granting the City's plea to the jurisdiction as well as the City's motion for summary judgment. Drew appealed.

## Plea to the Jurisdiction

On appeal, Drew contends that the trial court erred in granting the City's plea to the jurisdiction. Drew argues that she exhausted her administrative remedies by filing her charge of discrimination within 180 days of her resignation. She argues that the discrimination she experienced continued through her resignation and that she was constructively discharged. The City responds that the trial court does not have subject matter jurisdiction over Drew's claims because she did not timely file her administrative complaint. The City argues that Drew did not raise a fact issue on jurisdiction because the continuing violation doctrine does not apply, and she was not constructively discharged. We agree with the City.

### A. Standard of Review

A plea to the jurisdiction challenges the trial court's subject matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Whether the

5

plaintiff has alleged facts showing subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Although we are not to reach the merits of the plaintiff's case, when the plea to the jurisdiction challenges the existence of jurisdictional facts, we consider the relevant evidence submitted by the parties necessary to resolve the jurisdictional issue. *Id.* at 227. This procedure generally mirrors that of a summary judgment. *Id.* at 228; *see* TEX. R. CIV. P. 166a(c).

The plaintiff has the initial burden to plead facts showing the trial court's subject matter jurisdiction. *See Miranda*, 133 S.W.3d at 226. The burden then shifts to the governmental unit to show that the trial court lacks subject matter jurisdiction. *Id.* at 228. If the governmental unit does so, the plaintiff must raise a material fact issue to overcome the plea to the jurisdiction. *Id.* If the evidence creates a fact issue on jurisdiction, the trial court should deny the plea to the jurisdiction. *Id.* If the evidence is undisputed or fails to raise a fact issue about the jurisdictional issue, the trial court should grant the plan to the jurisdiction. *Id.*

**B.     The Texas Commission on Human Rights Act ("TCHRA")**

The TCHRA prohibits an employer from discriminating against employees based on "race, color, disability, religion, sex, national origin, or age[.]" TEX. LAB. CODE § 21.051. It is also an unlawful employment practice to retaliate or discriminate against a person who, under the TCHRA, opposes a discriminatory

practice, makes or files a charge, or files a complaint. *Id.* § 21.055. In adopting the TCHRA, the Legislature "intended to correlate state law with federal law in employment discrimination cases"; accordingly, we may look to federal law to interpret its provisions. *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam).

The exhaustion of administrative remedies is a jurisdictional prerequisite to suing for unlawful employment practices. *See Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492–93 (Tex. 1996) (per curiam); *Santi v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 312 S.W.3d 800, 803–04 (Tex. App.—Houston [1st Dist.] 2009, no pet.). To exhaust administrative remedies under the TCHRA, a plaintiff must (1) file a complaint with the Texas Workforce Commission ("TWC") or the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged discriminatory act; (2) allow the agency 180 days to dismiss or resolve the complaint; and (3) sue in the district court within 60 days of receiving a right-to-sue letter from the agency and no later than two years after filing the complaint. TEX. LAB. CODE §§ 21.202, .208, .254, .256.

"The purposes underlying the administrative-complaint requirement include giving the charged party notice of the claim, narrowing the issues for speedier and more effective adjudication and decision, and giving the administrative agency and the employer an opportunity to resolve the dispute." *Lopez v. Tex. State Univ.*, 368

S.W.3d 695, 700–01 (Tex. App.—Austin 2012, pet. denied). The timely filing of a complaint is mandatory, and when the defendant is a governmental entity, the failure to timely file is a jurisdictional bar to suit. *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 514 (Tex. 2012).

## C.  Analysis

Both Drew and the City agree that Drew filed her administrative complaint on August 5, 2019. In her charge of discrimination, Drew checked the boxes asserting that the discrimination was based on sex, retaliation, and "other – hostile work environment." She identified the latest date of the discrimination as February 2, 2019 and checked the "continuing action" box.

In its plea to the jurisdiction, the City argued that pursuant to the 180-day limitations period of the Texas Labor Code, any events that occurred prior to February 6, 2019 are outside the 180-day limitations period and therefore untimely. The City contends that this encompasses all of Drew's complaints, including the sexual assault on November 9, 2018, alleged retaliation by assigning her to demolition inspection in January 2019, and her resignation on February 4, 2019. On appeal, Drew argues that the trial court should have considered all the allegedly unlawful acts through her resignation date under the continuing violation doctrine. She also argues that her resignation was a constructive discharge.

### 1. The continuing violation doctrine does not apply.

Drew argues that the alleged acts she experienced were one continuing violation, from the sexual harassment by Varela to her reassignment to the demolition review job. The City contends that Drew failed to provide any evidence demonstrating unlawful acts that qualified as a continuing violation.

An exception to application of the 180-day limitations period for the discriminatory act is the continuing violation doctrine. *Santi*, 312 S.W.3d at 804. The doctrine applies when an unlawful employment practice manifests over time, rather than as discrete acts. *Id.* at 804–05. Under the continuing violation theory, a plaintiff must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action. *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 493 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A plaintiff need not establish that all the alleged discriminatory conduct occurred within 180 days if the plaintiff can show a series of related acts, including one or more that are within the limitations period. *Tex. S. Univ v. Nayer*, No. 01-21-00497-CV, 2023 WL 138621, at *3 (Tex. App.—Houston [1st Dist.] Jan. 10, 2023, no pet.) (mem. op.) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004). The "focus is on what event should, in fairness and logic, have alerted the average layperson to act to protect his or her rights." *Autonation*, 226

S.W.3d at 493 (quoting *Wal-mart Stores v. Davis*, 979 S.W.2d 30, 42 (Tex. App.—Austin 1998, pet. denied)).

According to the City, its timely remedial efforts upon learning of Drew's complaint severed any later alleged act that occurred within the relevant time. Under the continuing violation doctrine, the plaintiff must demonstrate that the separate acts are related, and that the violation was continuing. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)). Intervening action by the employer, among other things, severs the acts that preceded it from those after it, precluding liability for preceding acts outside the filing window. *Id.* "When a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid . . . liability." *Id.* (quoting *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 329 (5th Cir. 2004)).

In *Stewart*, an employee reported sexual harassment by a supervisor to her employer. 586 F.3d at 325. The supervisor was instructed to stop the harassing conduct. *Id.* at 326. When Stewart complained a second time, the employer reassigned her to a similar position with a different supervisor. *Id.* A year later, the Stewart's supervisor was replaced by the original offending supervisor due to a vacancy. *Id.* The original supervisor resumed the harassment. *Id.* Stewart sued, and the Fifth Circuit upheld the district court's summary judgment in favor of the

employer because the continuing violation doctrine did not apply. *Id.*at 333. The Court held that the employer's intervening acts severed the two periods of alleged harassment, making her complaint about prior harassment outside the limitations period. *See id.* at 328–29.

As in *Stewart*, the City's remedial efforts break any continuity among the individual violations Drew alleges. *See Stewart*, 586 F.3d at 328 (stating intervening action by employer precludes liability for preceding acts outside the filing window). The City's efforts to protect Drew included suspending Varela and imposing a no-contact order in November 2018. In January 2019, the OIG sustained Drew's complaint, setting in motion the process that led to Varela's indefinite suspension. The City also reassigned Drew's parking spot in January 2019 in response to her concerns. In February 2019, Drew resigned.

The record does not contain evidence that supports the contentions that unlawful acts continued until February 2019. Drew argues that Varela continued to try to communicate with her through her coworkers until the date of her resignation; but this allegation is not supported by the record. In January 2019, Drew reported to Harris that coworkers were gossiping about her and asked Harris for information about the employee assistance program. He promptly responded with the information she requested. The evidence does not support that Varela was attempting to contact Drew through the coworkers, nor does the record contain

11

evidence supporting that any of Drew's complaints continued until the day that she resigned. *See Autonation*, 226 S.W.3d at 491 (stating the focus is on the discriminatory act, not when the consequence of the act becomes most painful). The continuing violation doctrine does not apply to extend the statute of limitations to the date that Drew resigned because the resignation was not the time that Drew was "alerted . . . to act to protect . . . her rights." *Wal-Mart Stores*, 979 S.W.2d at 42. The trial court did not err to the extent it granted the City's plea because the continuing violation doctrine did not apply.

### 2. Drew's resignation was not a constructive discharge.

Drew argues that though she resigned from the City, her voluntary resignation on February 4, 2019 should be treated as a constructive discharge. Based on this date, she argues that she met the 180-day deadline to file her administrative claim by filing on the 182nd day, which was the first business day 180 days after she was discharged. The City responds that Drew voluntarily resigned and was not constructively discharged. We agree.

Constructive discharge is "an employee's reasonable decision to resign because of unendurable working conditions." *Baylor Univ. v. Coley*, 221 S.W.3d 599, 605 (Tex. 2007) (quoting *Pa. St. Police v. Suders*, 542 U.S. 129, 141 (2004)). "A constructive discharge qualifies as an adverse personnel action under the TCHRA, but requires proof that the employer made the working conditions so

12

intolerable that a reasonable person would feel compelled to resign." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010). The key inquiry for constructive discharge does not focus on whether a particular employee felt compelled to resign; instead, it focuses on whether a reasonable employee would have felt compelled to do so. *Merrell v. City of Sealy*, No. 01-21-00347-CV, 2022 WL 3970078, at *8 (Tex. App.—Houston [1st Dist.] Sept. 1, 2022, no pet.) (mem. op). "The inquiry addresses the conditions imposed, not the employer's state of mind." *Id.* In determining whether an employee's resignation was reasonable, we may consider the following factors: (1) demotion, (2) reduction in salary, (3) reduction in job responsibilities, (4) reassignment to menial or degrading work, (5) reassignment to work under a supervisor who subjects the employee to discriminatory or harassing behavior, (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation, or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not. *Hartranft v. UT Health Sci. Ctr.-Houston*, No. 01-16-01014-CV, 2018 WL 3117830, at *13 (Tex. App.—Houston [1st Dist.] June 26, 2018, no pet.) (mem. op.) (citing *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2004, no pet.)).

Drew alleges that her reassignment to inspecting buildings before demolition was a retaliatory reassignment that, coupled with Varela's attempts to reach her

through coworkers, created an intolerable work environment. She argues that management's lack of response and disregard for her safety while she was working alone inspecting abandoned buildings from the end of January through her resignation demonstrates that she was constructively discharged on February 4, 2019.

There is no evidence in the record that Varela directed coworkers to communicate with Drew on his behalf. There is also no evidence he threatened to harm Drew or that she expressed concern for her safety based on the coworkers' comments. Even if Varela told coworkers that he expected to return to work, the OIG decision at the end of January 2019 and the City's actions that followed show that Varela's plans were fantastical. Harris also testified that reassigning Drew along with nine other colleagues to inspect whether buildings were still standing and in need of demolition was based on the employee's workloads and availability, and it was not related to her November 2018 sexual harassment complaint. Harris further testified that while Drew inspected the sites alone, she was only expected to take photographs from her car and was instructed to leave or call a supervisor if she felt unsafe. She was also provided with technology that tracked her location. The facts do not support that Drew's job reassignment was retaliatory or in any way related to her prior sexual harassment complaint. The record further reflects that the City responded to Drew's complaints about her safety following the sexual

14

harassment allegation. When Drew felt unsafe in her parking spot, the City promptly reassigned her. At Drew's request, Harris promptly provided Drew with the employment assistance program.

The record does not reflect the kind of aggravating factors to discrimination that would be sufficient for a claim of constructive discharge. *See Harvill v. Westward Commc'ns, L.L.C.*, 443 F.3d 428, 440 (5th Cir. 2005) (stating discrimination alone is insufficient for constructive discharge without aggravating factors). The City timely investigated and acted on Drew's complaints. *See Carlton v. Hous. Cmty. Coll.*, No. 01-11-00249-CV, 2012 WL 3628890, at *18 (Tex. App.—Houston [1st Dist.] Aug. 23, 2012, no pet.) (mem. op.) (holding employer's investigation of plaintiffs' complaints undercut claim of constructive discharge when measured against a reasonable-employee standard); *Cox v. Waste Mgmt. of Tex., Inc.*, 300 S.W.3d 424, 433 (Tex. App.—Fort Worth 2009, pet. denied) (as a matter of law, conditions of employment should not have compelled resignation given employer's investigation and action in response to employee's complaint about treatment by supervisor was timely and reasonable); *Tiner v. Tex. Dep't of Transp.*, 294 S.W.3d 390, 395–96 (Tex. App.—Tyler 2009, no pet.) (rejecting constructive discharge when employer timely investigated and acted on employee's complaint about coworker). We decline to hold that Drew was constructively discharged.

* * *

Because the continuing violation doctrine does not apply and Drew was not constructively discharged, Drew failed to timely exhaust her administrative remedies. We therefore hold that the trial court did not err by granting the City's plea to the jurisdiction and dismissing Drew's claim. We overrule Drew's issue related to the plea to the jurisdiction. We need not address Drew's remaining issues related to summary judgment. *See* TEX. R. APP. P. 47.1.

## Conclusion

We affirm the trial court's judgment.


Peter Kelly
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.