**Reversed and Rendered and Memorandum Opinion filed February 13, 2024**



In The

# Fourteenth Court of Appeals

## NO. 14-23-00109-CV

## GALVESTON COUNTY, TEXAS, Appellant

## V.

## BRENT COOLEY, Appellee

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 22-CV-0467**

## M E M O R A N D U M   O P I N I O N

This interlocutory appeal of an employment-discrimination case turns on the timeliness of an administrative complaint. To determine whether the complaint was timely, we are required to identify the date of the alleged unlawful employment practice. If timely, then we are asked to decide whether an employer's decision to discharge an employee for the off-duty, racially-motivated assault of another employee was based on pretextual motives. Having determined that appellee's complaint was untimely, we reverse the trial court's order denying appellant's plea

to the jurisdiction and render judgment dismissing appellee's disability and retaliation claims for want of subject-matter jurisdiction.

## *Background*

Brent Cooley joined the Galveston County Sheriff's Office (GCSO) in 2000. He began his career as a deputy in the Corrections Division. Over the next eighteen years, Cooley was promoted to lieutenant with the School Liaison Division of the GCSO. He was assigned to the Texas City Independent School District (Texas City ISD) where he supervised approximately fifty employees.[1]

On May 18, 2020, Cooley went to an annual memorial gathering at Blue's Bar & Grill to commemorate the anniversary of the mass shooting at Santa Fe High School. He arrived around 5:00 p.m. and was joined by other officers who also had responded to the mass shooting two years prior. Cooley remained at the bar until it closed at 2:00 a.m. During the nine-hour period he was at the bar, he consumed several shots of alcohol and also had several beers. On a scale of 1 to 10, Cooley self-described his intoxication level as a "10."

Once the bar closed, several officers were outside waiting to transport the intoxicated officers from the bar. Breann Boone, a female deputy with GCSO, was one of the officers tasked with providing safe passage. According to Deputy Boone, Cooley exited the bar with a beer in his hand. He walked towards her and Brittany Shores, an officer with the La Marque Police Department. Cooley pushed Deputy Boone in her chest with his free hand and queried why she was there. Cooley then pushed Deputy Boone again and declared, "We don't want a n***** here." Officer Shores turned to Cooley and asserted, "[W]e don't say the 'N word' like that."

---

[1] Texas City ISD contracted with Galveston County to create a School Liaison Officer Program. The Agreement required the County to assign a certain number of officers to perform law enforcement services for Texas City ISD.

2

Cooley then riposted, "[T]hat's what [Deputy Boone] is[.] [W]hat do you expect me to call her[?] [S]he's a n*****. . . . [W]e can't trust a n*****."

Angered, Deputy Boone walked away. Her supervisor, Corporal Zack Holley, approached her and inquired about her change in disposition. Deputy Boone advised Cpl. Holley to "go ask [his] Lieutenant that just called [her] a n***** in front of everyone." Cooley later admitted that he had no recollection of his exchange with Deputy Boone because he was blacked out from all the alcohol. Deputy Boone, however, remembered. She later told investigators that she intended to resign because she did not expect such treatment "from somebody within [her] own agency." Officer Shore also remembered. She confirmed that Cooley directed racial epithets at Deputy Boone.

On June 1, Captain Josette Rivas and Major Ron Hill notified Cooley that a complaint had been made against him by Chief Deputy Darryl Isaacks, requesting that the Office of Professional Standards (OPS) investigate Cooley's mistreatment of Deputy Boone. Cooley received formal notice of the complaint on June 18. The complaint alleged that Cooley violated the following GCSO policies and state law: (1) GC 03.4(B): Conduct Prejudicial to Good Order; (2) GC 03.4(D): Conduct Toward Fellow Employees; and (3) Texas Penal Code § 22.01(A)(3): Assault (Class C misdemeanor). Cooley was placed on administrative leave pending the internal investigation by OPS.

On July 14, OPS sustained the allegations against Cooley. Capt. Rivas sent Cooley an Administrative Action Report recommending termination. Cooley rejected the recommendation and requested a hearing before the Adverse Action Committee (AAC). On July 21, AAC submitted findings upholding the prior termination recommendation. That same day, Cooley, through his counsel, emailed Sheriff Henry Trochesset to appeal the AAC's decision.

On August 3, about two weeks after appealing his termination recommendation, Cooley requested twelve weeks of leave under the Family and Medical Leave Act (FMLA) based on his "own serious health condition." This request was approved by the County, and Cooley was on leave from August 10 to November 2. The appeal process was postponed while Cooley was on FMLA leave. However, before Cooley's leave commenced, Melissa Duarte, the Texas City ISD Superintendent of Schools, sent a letter to Sheriff Trochesset and Capt. Rivas requesting that Cooley be "removed from his position with Texas City ISD."[2] Consistent with the Agreement between Texas City ISD and the County, Sheriff Trochesset reassigned Cooley from the School Liaison Division to the Corrections Division. Consequently, Cooley was demoted from a lieutenant to a deputy. The effective date of Cooley's reassignment and demotion was August 6, but the personnel adjustment request was dated August 12. Cooley's appeal resumed after he exhausted his FMLA leave. Ultimately, Sheriff Trochesset indorsed the prior termination recommendations. Cooley was officially terminated on December 16.

On February 16, 2021, Cooley filed a dual administrative complaint with the Texas Workforce Commission (TWC) and the Equal Employment Opportunity Commission (EEOC), alleging discrimination based on disability and retaliation. In his complaint, Cooley claimed that Capt. Rivas' actions in removing him from his contract with Texas City ISD "cause[d] [him] to take an eighteen ($18) dollar per hour pay cut."[3] Cooley further argued that he was previously diagnosed with post-

---

[2] The Agreement between Texas City ISD and the County permitted Texas City ISD to request the removal of any officer for "performance or other employment related concerns" or "in the event an allegation of serious misconduct has been raised about an Officer" by sending written notice to the Sheriff.

[3] The record demonstrates that there was not a contractual relationship between Cooley and Texas City ISD. As discussed, Texas City ISD contracted with the County to create a School Liaison Officer Program. Essentially, GCSO assigned Cooley to Texas City ISD to provide law

traumatic stress disorder and depression, but "any form of accommodation for [his] disability was limited." According to Cooley, the alleged discrimination took place from May 18, 2018 to August 6, 2020.

Cooley sued Galveston County (the County) for disability discrimination and retaliation under Chapter 21 of the Labor Code (Chapter 21). *See* Tex. Lab. Code §§ 21.051, 21.055. The County filed a plea to the jurisdiction, asserting that the trial court lacked jurisdiction because Cooley missed the 180-day deadline to file his complaint. The County also moved for summary judgment on Cooley's claims. After a hearing, the trial court signed an order denying the County's plea to the jurisdiction and motion for summary judgment. The County now brings this interlocutory appeal. *See* Tex. Prac. & Rem. Code § 51.014(a)(8).

### *Discussion*

In three issues, the County maintains that the trial court improperly denied its plea to the jurisdiction. In its first issue, the County asserts that Cooley missed the 180-day limitations period under Chapter 21. The County argues that the limitations period accrued on August 6, 2020—the date Cooley knew he was facing termination and the latest date of discrimination he alleged in his complaint. By contrast, Cooley contends that his complaint was timely because the "last act" of discrimination occurred on December 16, 2020—the date Cooley was officially terminated.

In its second issue, the County argues that the trial court lacked subject-matter jurisdiction because Cooley failed to establish a prima facie case for disability discrimination. According to the County, Chapter 21 does not immunize Cooley from termination when he repeatedly directed the "most offensive racial slur" at his colleague and drunkenly assaulted her. Cooley, however, suggests that the reason

---

enforcement services.

for termination proffered by the County was pretextual.

In its third issue, the County asserts that the trial court lacked subject-matter jurisdiction because Cooley cannot establish a prima facie case for retaliation. Specifically, the County insists that FMLA leave is not a protected activity. Conversely, Cooley alleges that similarly situated officers were "allowed to frequently use racial slurs without any repercussions."

We begin our analysis by considering whether Cooley timely submitted his administrative complaint with EEOC and TWC. *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 514 (Tex. 2012) (providing that the timely filing of a complaint is mandatory, and when the defendant is a governmental entity, the failure to timely file is a jurisdictional bar to suit.)

**Plea to the Jurisdiction.** Governmental units, like the County, are typically immune from suits except for claims for which their immunity has been waived by the legislature. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *Univ. of Tex. Health Sci. Ctr. at Hous. v. Rios*, 542 S.W.3d 530, 532 n.4 (Tex. 2017). Absent a waiver, a governmental unit's immunity deprives a trial court of subject-matter jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). The legislature created a limited waiver of immunity in Chapter 21, but only when a plaintiff states a claim that actually violates the statute. *See Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 770; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 639 (Tex. 2012).

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Whether the plaintiff has alleged facts showing subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks*, 133 S.W.3d at 226. Although we are not to reach the merits of the plaintiff's case, when the plea to the jurisdiction

challenges the existence of jurisdictional facts, we consider the relevant evidence submitted by the parties necessary to resolve the jurisdictional issue. *Id.* at 227. This procedure generally mirrors that of a summary judgment. *Id.* at 228; *see generally* Tex. R. Civ. P. 166a(c).

The plaintiff has the initial burden to plead facts showing the trial court's subject matter jurisdiction. *See Tex. Dep't of Parks*, 133 S.W.3d at 226. The burden then shifts to the governmental unit to show that the trial court lacks subject matter jurisdiction. *Id.* at 228. If the governmental unit does so, the plaintiff must raise a material fact issue to overcome the plea to the jurisdiction. *Id.* If the evidence creates a fact issue on jurisdiction, the trial court should deny the plea to the jurisdiction. *Id.* If the evidence is undisputed or fails to raise a fact issue about the jurisdictional issue, the trial court should grant the plea to the jurisdiction. *Id.*

Chapter 21 prohibits an employer from discriminating against employees based on "race, color, disability, religion, sex, national origin, or age[.]" Tex. Lab. Code § 21.051. It is also an unlawful employment practice to retaliate or discriminate against a person who, under Chapter 21, opposes a discriminatory practice, makes or files a charge, or files a complaint. *Id.* § 21.055. In adopting Chapter 21, the legislature "intended to correlate state law with federal law in employment discrimination cases"; accordingly, we may look to federal law to interpret its provisions. *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam).

The exhaustion of administrative remedies is a subject-matter jurisdictional prerequisite to suing for unlawful employment practices. *See Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492–93 (Tex. 1996) (per curiam). To exhaust administrative remedies under Chapter 21, a plaintiff must (1) file a complaint with TWC or EEOC within 180 days of the alleged discriminatory act; (2) allow the agency 180 days to dismiss or resolve the complaint; and (3) sue in the district court

within 60 days of receiving a right-to-sue letter from the agency and no later than two years after filing the complaint. Tex. Lab. Code §§ 21.202, .208, .254, .256.

As discussed, the County asserts that Cooley's complaint was untimely because it was filed after the expiration of the latest date of discrimination alleged in the complaint. The County argues that Cooley's complaint is dated February 16, 2021, but EEOC stamped the complaint as "received" on February 26, 2021. The County suggests that it is inapposite whether the "dated" or "received" date is the applicable measuring standard for determining timeliness because Cooley's complaint is untimely under either date. Cooley, on the other hand, does not cite the date that he filed his complaint or otherwise propose when the complaint was perfected. Nevertheless, he maintains that his complaint was timely because the "last act" of discrimination occurred on December 16, 2020." If December 16 is indeed the date the limitations period commenced, then Cooley would be correct. If not, then his position is fatal because failure to timely file is a jurisdictional bar to suit against a governmental entity.

As a threshold matter, we address whether Cooley's complaint was perfected on February 16, the date the complaint was filed, or February 26, the date the complaint was received by the commission. Chapter 21 provides that a complaint "must be in writing and made under oath . . . [and] must state: (1) that an unlawful employment practice has been committed; (2) the facts on which the complaint is based . . . , and (3) facts sufficient to enable the commission to identify the respondent." *See id.* § 21.201(c)–(d). Thus, a complaint is perfected if it is in writing, made under oath, and contains the requisite language. *See id.* Reviewing the complaint filed by Cooley, it is in writing; signed "under penalty of perjury"; alleges an unlawful employment practice; includes the date, place, and circumstances of the alleged unlawful employment practice; and contains sufficient facts to identify the

8

County. *Id.* Thus, we conclude that Cooley's complaint was perfected on February 16, 2021. Now, we analyze whether Cooley timely submitted his administrative complaint with EEOC and TWC.

The parties advance different dates that the alleged unlawful employment practice occurred. The County contends that the limitations period accrued on August 6, 2020 when Cooley learned that he was facing an adverse employment action. The County submits four events that indicate Cooley knew he was facing termination: (1) OPS sustained all three violations alleged against him; (2) Capt. Rivas recommended termination; (3) AAC confirmed the termination recommendation; and (4) Texas City ISD requested that he be removed from his position. Also, the County emphasizes that the August 6 date is consistent with the latest date of alleged discrimination identified by Cooley in his complaint. To support its position, the County cites three cases concluding that the limitations period commenced when the employer informed the employee of an adverse-employment decision. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 259 (1980) (concluding that the limitations period commenced when the professor was notified that a tenure decision was made); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (concluding that the limitations period commenced when the employee was informed that she would be fired if her leave of absence lasted longer than one year); *Univ. of Tex.—MD Anderson Cancer Ctr. v. Phillips*, No. 01-18-00221-CV, 2018 WL 6379503, at *4 (Tex. App.—Houston [1st Dist.] Dec. 6, 2018, no pet.) (mem. op.) (concluding that the limitations period commenced the date the employee was informed of the employer's intent to terminate her employment).

By contrast, Cooley alleges that the limitations period did not commence until he was officially terminated on December 16. Without a single reference to the

record, Cooley states that the live pleadings and complaint "established that [his complaint] should toll the start of the 180-day clock because the alleged discriminatory conduct occurred within the actionable period, in addition to acts that otherwise would be time-barred, the conduct continued into the actionable period." His argument is not a model for clarity, but Cooley seems to contend that the continuing violation doctrine tolled the limitations period because he was not informed that he was actually terminated until a month and a half after his FMLA leave ended.

Before we discuss the applicability of the continuing violation doctrine, we first must identity the date of the alleged unlawful employment practice. The time period for filing a complaint begins to run when the discriminatory acts occur, not when the consequences of the acts become most painful. *Specialty Retailers*, 933 S.W.2d at 492. In the case of an alleged discriminatory employment decision, the limitations period begins to run when the employee is informed of the decision, not when the decision comes to fruition. *Id.* at 493.

Following the incident outside the bar, the record shows that a series of events occurred that eventually resulted in Cooley's termination. As discussed, Cooley received formal notice that he was being investigated by OPS for his off-duty mistreatment of Deputy Boone on June 18. On July 14, the allegations against him were sustained, and Capt. Rivas recommended termination. After Cooley requested a hearing before the AAC, the allegations were sustained, and termination was again recommended on July 21. Cooley appealed the AAC's determination on July 21. On August 6, Cooley was reassigned from his position at Texas City ISD. He was demoted from a lieutenant to a deputy, which he alleged resulted in an $18 per hour pay cut. Ultimately, Cooley's appeal was ostensibly denied, and he was terminated on December 16.

10

Though Cooley's complaint alleged that the latest act of discrimination took place on August 6, the date he was removed from his position with Texas City ISD, we conclude that the limitations period commenced on July 14 when Captain Rivas informed Cooley that the allegations against him were sustained, and termination was recommended. At this point, Cooley was informed of the allegedly discriminatory employment decision albeit the decision did not come into fruition until December 16. *See id.*; *see also Ricks*, 449 U.S. at 258 ("The proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts become most painful.") (emphasis in original) (quoting *Abramson v. Univ. of Haw.*, 594 F.2d 202, 209 (9th Cir. 1979)). Thus, Cooley was required to file his complaint no later than January 10, 2021. According to the record, Cooley did not file his complaint until February 16, 2021.[4]

Having determined that the limitations period commenced on July 14, we next consider whether the continuing violation doctrine, an exception to the application of the 180-day limitations period, tolled the limitations period. *Santi v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 312 S.W.3d 800, 804 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The continuing violation doctrine applies when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts. *Id.* at 804–05. Under this theory, a plaintiff is required to "show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." *Id.*

In this case, Cooley does not offer any cogent explanation regarding the

---

[4] We are mindful that the latest date of discrimination alleged in Cooley's complaint was August 6. Even if we assume the limitations period commenced on this date, the complaint would nonetheless be untimely because Cooley would have been required to file his complaint no later than February 2, 2021.

doctrine's applicability. Indeed, the analysis advanced is replete with conclusory statements that are not supported by the record. For example, Cooley suggests that

> [he] has provided the trial court with genuine issues of jurisdictional facts and the facts, taken as a whole, [that] provide insight that it was an ongoing scheme against [him] based on his protected class. . . . [He] has provided factual allegations that the action is continuing and was not severed at any point. . . . [He] provide[d] jurisdictional fact questions that he continued to feel the effects of the discrimination after his first request for accommodations, up until his termination was official approved in December 2020. . . . The jurisdictional evidence proves [he] was not informed of his termination (to start the 180-day clock) until December 16, 2020.

But, Cooley did not allege a continuing violation or an "organized scheme leading to and including a present violation" in his complaint. *Id.* Instead, he complains of discrete acts, i.e., he was removed from his position at Texas City ISD, he was demoted from a lieutenant to a deputy, and he was eventually terminated. *See id.* ("[T]ermination, failure to promote, denial of transfer, or refusal to hire are discrete acts.") (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, (2002)).

To the extent that Cooley claims that "he continued to feel the effects of the discrimination after his first request for accommodations," the record demonstrates that the only form of disability-related accommodation Cooley ever sought was FMLA leave. *See generally Contra Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017) ("FMLA leave is not a reasonable accommodation under the ADA; rather it is a right enforceable under a separate statutory provision.") (quoting *Harville v. Tex. A&M Univ.*, 833 F. Supp. 2d 645, 661 (S.D. Tex. 2011)). Furthermore, the record does not indicate Cooley checked the "continuing action" box when he filed his complaint. Indeed, he unequivocally asserted that the earliest date of the alleged discrimination began on May 18, 2018, and ended on August 6, 2020. There is no evidence that he ever amended his complaint. *See* Tex. Lab. Code

§ 21.201(e) (providing that a complaint may be amended to cure defects or omissions).

We conclude that Cooley did not allege facts to raise the issue of a persisting and continuing system or a continuing scheme as required to show a continuing violation. Having concluded the limitations period was not tolled, Cooley's claims are barred by governmental immunity.

Accordingly, we sustain the County's first issue. We do not reach the County's remaining issues of whether Cooley established a prima facie case for disability discrimination and retaliation because the trial court lacked subject-matter jurisdiction over the suit.

### *Conclusion*

We reverse the trial court's order denying the County's plea to the jurisdiction and render judgment dismissing Cooley's disability and retaliation claims for want of subject-matter jurisdiction.

/s/ Frances Bourliot
Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.